MOORE *v.* MUTUAL RESERVE FUND LIFE ASSOCIATION.

1. Life Insurance — Application — Breach of Warranty — Waiver.

Where a life-insurance company, on being informed that an applicant for a policy had been rejected by another company, and had taken the gold cure, contrary to the representations in his application, brought the matter to the attention of the applicant, who explained that he had not been rejected, but had withdrawn his application, and had not taken the gold cure, but had merely gone to the institution to influence a friend to go, and the company issued the policy in reliance on such explanations, it could insist on the original warranties in case the explanations were untrue, but not otherwise.

2. Same.

A life-insurance company, by issuing a policy with knowledge of the falsity of certain warranties in the application therefor, waives the right to rely on those warranties, but not on others, of the falsity of which it has no knowledge. So *held,* where an applicant stated that he had never been rejected by any company, though he had in fact been rejected by six or seven, and also falsely represented that he had never been attended by a physician, or been an inmate of any infirmary or institute, that he had policies in two other companies, and that no physician had ever given an unfavorable opinion as

to his insurability, and the company applied to issued a policy after being informed that he had been rejected by two companies, and had taken the gold cure.

3. SAME—GARNISHMENT.

The fact that a life-insurance company, on being garnished by a creditor of a beneficiary, merely filed a disclosure denying any indebtedness, and answered the special interrogatories, without setting up certain breaches of warranty on which it sought to rely until several months afterwards, when it obtained leave of court to file further answers, is insufficient to show a waiver of its right to rely on such warranties.

4. SAME—BURDEN OF PROOF.

In an action founded on a life policy, the fact that the defendant insurance company was given the opening and rebutting in the introduction of testimony, because it had the burden of proving an alleged breach of warranty, did not affect the rule that plaintiff had the burden of proving a waiver of the breach by defendant.

Error to Wayne; Frazer, J.   Submitted October 11, 1901. (Docket No. 47.)   Reargued May 15, 1903.   (Docket No. 80.)   Decided June 23, 1903.

Garnishment proceedings by George F. Moore and others, copartners as Edson, Moore & Co., and others, against the Mutual Reserve Fund Life Association, as garnishee of Eva Winans.   From a judgment for defendant on verdict directed by the court, plaintiffs bring error.   Affirmed.

*Elliott G. Stevenson, John D. Conely,* and *Leo M. Butzel,* for appellants.

*Dickinson, Warren & Warren* (*Charles B. Warren,* of counsel), for appellee.

HOOKER, C. J.   William N. Winans, the husband of Eva Winans, applied to the defendant on October 15, 1895, for a policy of insurance for $10,000 upon his life, payable to his wife.   The application contained the usual questions, to which he made answer, and the provision that these answers should be warranties, and avoid the policy if they

were not in all respects true. There was some delay in the acceptance of this risk by the company, but the policy was finally issued upon January 15, 1896, and sent to its agent, with direction to deliver upon the execution by the applicant of a certificate of good health, which, when executed, contained a reaffirmance that his statements in the application were true and should constitute warranties. The policy was delivered on January 18, 1896.

Winans was accidentally drowned on August 24, 1896, and upon August 25, 1896, a writ of garnishment was sued out in behalf of Edson, Moore & Co. against the defendant insurance company. A disclosure in writing was filed October 9, 1896, denying that, at the time of service, it was in any manner indebted to Eva Winans. It also stated that it had been previously served with similar process at the suit of two other alleged creditors of Eva Winans. On October 19, 1896, interrogatories were filed and served, and, October 26th, the time for answering was extended by stipulation to November 10, 1896, when the answers were filed, admitting the issuance of a policy to Winans for $10,000, payable to Eva Winans, that the last premium was paid August 1, 1896, that it had received papers purporting to be proofs of loss, and that it had no knowledge whether Winans was dead or not. Plaintiffs afterwards demanded a trial of the statutory issue in garnishment. The date of this is not stated.

On July 1, 1897, a motion was made and leave granted to file further answers, which set up in detail the alleged breaches of warranty upon which defendant relied at the subsequent trial, in which it was stated that, at the time when the former answers were made, it was not in a position to set out the breaches of warranty on which it relied. The cause was consolidated with three others of like character, and upon the trial a verdict for the defendant was rendered, by direction of the court, upon the ground that there were "warranties in this application that have been shown to be false, that were never brought to the knowledge of the company, and they never directly

or by inference waived. Such is the warranty that he never had been treated by any other physician. Such is the warranty in regard to his temperate habits. Such is the warranty in regard to his insurance in other companies." In his charge the learned circuit judge said further:

"It is also claimed that, at the time the proofs of loss were furnished, these facts were known; that is, that the giving of the proofs of loss, handing out this blank, allowing the party to make his proofs, is a waiver of any defenses that they now have or might have had at the time. I do not find under the evidence, as I look at it, that there was any such knowledge at the time these proofs of loss were furnished. Neither do I find that, under the law, the mere giving out of this blank is a waiver of anything.

"Another proposition is that the pleadings in this case prevented the defendant from setting up this defense. The pleadings recited the answers to the interrogatories. I believe now, as I did at the time I admitted those amended interrogatories, that they are part of the pleadings in this case. I see no evidence that they were not made the issue as soon as the company was informed of them."

The plaintiffs have brought error.

Upon the trial the court held that the burden of proof was upon the defendant to show the breach of warranties contained in the contract, and it was made to appear that the application contained the following:

"It is hereby agreed that the answers and statements in this application ( parts 1 and 2 ), whether written by the applicant or not, are warranted to be full, complete, and true, and that this agreement and the constitution or bylaws of the association, with the amendments thereto, together with this application, are hereby made part of any policy that may be issued hereon; that if any of the answers or statements made are not full, complete, and true, or if any condition or agreement shall not be fulfilled as required herein or by such policy, then the policy issued hereon shall be null and void, and all money paid thereon shall be forfeited to said association; that the person soliciting or taking this application, and also the medical examiner, shall be the agents of the applicant as to all statements and answers in this application, and no statements or answers

made or received by any person, or to the association, shall be binding on the association, unless such statements or answers be reduced to writing and contained in this application."

. It also contained the following questions and answers:

"9. Has the applicant now any insurance on his life? If so, where, when taken, for what amounts, and what kinds of policies? Company or Association: *Ætna, New York Life, National Union, A. O. U. W., Equitable of Iowa.* Date issued: *1893, 1893, 1893, 1894.* Amount: *$2,000, $10,000, $3,000, $2,000, $20,000.*

"10. Has any proposal to insure the life of the applicant ever been postponed or declined? If so, by what company or association, and for what reason? *No.*

"11. Has any proposal or application to insure the life of the applicant or for membership ever been made to any company, association, or agent upon which a policy or certificate of membership has not been received by you in person for the full amount and kind and at the rate applied for? *No.*

"12. Have you any insurance on your life or membership in any company or association not mentioned in answer to above question No. 9? *No.*

"13. Has any physician given an unfavorable opinion upon the life of the applicant with reference to life insurance or otherwise? If so, state particulars. *No.*

. "14. Has the applicant ever had any illness, local disease, injury, mental or nervous disease or infirmity? If yes, state nature, date, duration, and severity of attack. *Never sick in bed a day in my life.*

. "15. *A.* How long since you consulted or were attended by a physician? Give date. *B.* State name and address of such physician. *C.* For what disease or ailment? *D.* Give name and address of each physician who has prescribed for or attended you within the past five years, and for what diseases and ailments, and date. *E.* Have you had any illness, disease, or medical attendance not stated above? *A. None. B.* Name, *none.* Address, ——. *C. None. D.* Name, *none.* Address, ——. *E. No.*

"16. Have you used externally or internally any patent, proprietary, or other medicines of any kind within the past two years? If so, what medicines, and for what? *No.*

. "17. Has the applicant been an inmate of any infirm-

ary, sanitarium, institute, asylum, or hospital?   If so, where?   When?   Duration?   For what cause?   State expressly each and every case.   *No.*"

The testimony shows that his policy in the Ætna Company was canceled, for cause, five months before he made the application in this case.   He had no policy in the New York Life-Insurance Company.   He had a policy in the Independent Order of Foresters for $5,000.   He had been rejected by the Home Life-Insurance Company of New York, the Mutual Life Company of New York, the Equitable Life Company of New York, the Mutual Benefit Company of Newark, N. J., the New York Life-Insurance Company, and the Ætna Life Company of Hartford. He had also been rejected by the Berkshire Life-Insurance Company after the application to defendant was first made, but before its reaffirmance.   Several physicians of life-insurance companies had given unfavorable opinions and reports.   He had been treated by a physician in 1891 for chronic alcoholism, and by the physician in charge of the Keeley Institute, at Northville, from April 29 to May 20, 1892, and by Dr. Brady, in Detroit, in 1894.   He had been an inmate of the Keeley Institute for treatment for nearly a month.

These false statements were sufficient to invalidate the policy, unless a waiver or estoppel can be found.   *Rhode* v. *Insurance Co.*, 129 Mich. 112 (88 N. W. 400).   There was testimony showing that the defendant had some information indicating the falsity of some of these statements before it issued the policy; *e. g.*, it had ascertained that the Equitable Company had rejected him for some reason unknown to defendant's officers, and that he had been rejected by the Home Life-Insurance Company for the reason that it was informed that he occasionally drank to excess; also that he was insured in the Michigan Mutual Life; also that he had taken the gold cure.   There was testimony (undisputed) tending to show that the defendant had no information that other warranties were untrue, and it was shown that, when Winans' attention

was called to those mentioned, he explained them by saying that he was not rejected by the Equitable and Home Companies, but, becoming annoyed at their delay, withdrew the applications, and he denied taking the gold cure, but explained that he did go to the institute with a friend, solely to influence the friend to go.

It is contended that, by issuing its policy under these circumstances, the company waived not only its right to rely upon the warranties mentioned, but all of the others. If the explanations above stated were true, the warranties to which they apply could not now be insisted upon, but, if untrue, they would be available, and, in any event, the waiver of these would not constitute a waiver of others. The courts have manifested a reluctance to enforce forfeitures in actions upon life-insurance policies, and have applied the doctrines of estoppel and waiver with much strictness against companies seeking to enforce them; but there can be no waiver nor estoppel which does not involve the knowledge by the company of the facts upon which the waiver or estoppel rests. The defendant cannot in this case insist upon a forfeiture based on the fact that Winans was insured in the Mutual Life, because it had notice of the fact, and chose to issue its policy with that understanding. The same would be said regarding its information in relation to the rejections and the gold cure, but for Winans' denial and plausible explanation, upon which the defendant's officers had a right to and apparently did rely.

But, aside from these, there are several other warranties which its officers believed when the policy issued, and these are sufficient to justify a forfeiture, unless subsequently waived either by acceptance of premiums or the failure to seasonably rely upon them in their defense. *Finch* v. *Modern Woodmen of America*, 113 Mich. 646 71 N. W. 1104); *Ferris* v. *Assurance Co.*, 118 Mich. 485 (76 N. W. 1041); *Brown* v. *Insurance Co.*, 65 Mich. 306 (32 N. W. 610, 8 Am. St. Rep. 894); *Ketcham* v. *Accident Ass'n*, 117 Mich. 521 (76 N. W. 5); *Bennecke* v.

*Insurance Co.*, 105 U. S. 359; *Robertson* v. *Insurance Co.*, 88 N. Y. 541; *Weed* v. *Insurance Co.*, 116 N. Y. 106 (22 N. E. 229); *United States Ins. Co.* v. *Moriarty*, ( Tex. Civ. App.) 36 S. W. 943; *Dover Glass Works Co.* v. *Insurance Co.*, 1 Marv. (Del.) 32 (29 Atl. 1039, 65 Am. St. Rep. 264); *Equitable Life-Assur. Soc.* v. *McElroy*, 83 Fed. 631, 28 C. C. A. 365.

The false statements were numerous.   He was not insured in two companies that he claimed to have policies from.   He had been rejected by four or five companies, though he said he had been rejected by none.   Unfavorable reports had been made by physicians in several instances, though he stated no such report had been made. He had been attended by two physicians, contrary to his statement.   That these representations were warranties, and may be relied on as such, is beyond controversy.   See *Hubbard* v. *Mutual Res. Fund Life Ass'n*, 100 Fed. 719 40 C. C. A. 665, and cases cited.

It is intimated that premiums were received with knowledge of the falsity of the warranties; but we find no evidence of this, nor does it appear that there was a fatal failure to disclose defendant's claim.   The disclosure unqualifiedly stated that the defendant was not indebted at the time of service to Eva Winans in any way or manner.   It also prudently mentioned the service of earlier writs.   The answers filed were responsive to the interrogatories.   Before the cause was in readiness for trial, a most complete statement of the breaches relied upon was filed by leave of the court, upon the showing under oath that when the interrogatories were first answered, the defendant was unable to answer fully, as it was then engaged in investigating the subject.   In this statement several grounds of defense were stated, some of which were consistent with a primary liability upon its policy, but that fact did not constitute a waiver of others which were stated.

Counsel for the plaintiffs assert that the defendant failed to show that the right to assert a forfeiture was not

waived, because it failed to prove that it had no knowledge of these breaches when it filed its disclosure or first answers to interrogatories, insisting that there was no proof upon the subject. It appears from the answer filed by leave of court, and the evidence in the case indicates, that the policy was issued in reliance upon the application. There is no presumption of waiver, except when it is based upon facts which tend to imply it, and there are none here. Counsel build up an argument upon the fact that the court gave to the defendant the opening and rebutting in the introduction of evidence, upon the theory that the burden was upon it to prove the breach of warranty. Undoubtedly the burden was upon the defendant to prove this affirmative defense, and in turn the burden fell upon the plaintiffs to prove the waiver or estoppel, and this rule was not affected by the order in which the proofs were made.

These are the main questions raised by the record, which justifies the conclusion reached by the trial judge in directing a verdict for the defendant.

The judgment is affirmed.

The other Justices concurred.