Statement.

---

# Richmond.

## WESTCHESTER FIRE INSURANCE COMPANY v. OCEAN VIEW PLEASURE PIER COMPANY.

### March 14, 1907.

### Absent, Cardwell, J.

1. FIRE INSURANCE—*Building on Leased Ground—Ignorance of Insurer—Knowledge Imputed by Public Statute—Failure to Return Premiums—Estoppel.*—Where the condition of a fire insurance·policy is that it shall be void "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple," the insured by accepting the policy is charged with notice of its contents and bound by its conditions, and the company, by issuing the policy without inquiry, does not waive the condition as to title and ownership unless the facts were known to the company or its agent when the policy was issued, or the company was chargeable with such knowledge. Nor is the company obliged to return, or offer to return, the premiums voluntarily paid before notice of the fact that the policy is not in force as a condition precedent to availing itself of its defense to an action on the policy. Where, however, a structure stands on the bed of a bay declared by a public statute to be the property of the state, the insurance company, on a demurrer to the evidence by it, must be held to a knowledge of the true situation, and is estopped to set up a breach of the condition of the policy as to title as a defense to a recovery for the loss sustained.

2. FIRE INSURANCE—*Policy—Condition Against Fireworks—Permission Given By Tenant—Ignorance of Landlord.*—The condition of a fire insurance policy issued to the owner of property that the policy shall be void "if there be kept, used or allowed on the premises any fireworks" is violated, and there can be no recovery on the policy, when the loss was occasioned by an exhibition of fireworks on the premises with the permission of the tenant, although the landlord was wholly ignorant of it. The owner is bound by the provisions of the policy, and a breach of the condition by anyone permitted by him to occupy

---

---

the premises is a breach by him. It is his duty to see that his tenants do not violate the terms of his contract.

Error to a judgment of the Circuit Court of the city of Norfolk in a proceeding by motion for a judgment. Judgment on a demurrer to the evidence for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*William Leigh Williams,* for the plaintiff in error.

*Garnett & Garnett,* for the defendants in error.

KEITH, P., delivered the opinion of the Court.*

There was a petition for a rehearing of this case, in which an opinion was delivered on the 14th of June, 1906. In the opinion then delivered it was said: "If the insurance company knew at the time the contract of insurance was entered into that the land on which the insured building was located was not owned by the assured in fee simple, the insurance company would be considered as having waived that condition and would be estopped from setting up a breach of it as a defense"; and the opinion concludes that the insurance company was not estopped from making the defense that there had been a breach of the condition of the policy as to the title of the assured, and that the trial court erred in not so holding.

The petition for a rehearing relies upon the fact that the location of the property insured was upon a pier built upon the bed of Chesapeake bay, owned by the Commonwealth of Virginia, and which could not by law be the subject of absolute fee simple ownership in any person, and that the insurance

---

*Only the opinion on the rehearing was directed to be reported.

company and its agents were bound to take notice of this fact, notice of the title to the land being necessarily imputed to all who had dealings with respect to it; that the assured in this case simply ordered the policy to be taken out, and the insurance company delivered the same without any application or representation concerning the ·property by the assured; and the law, as stated in *Union Ass. Society* v. *Nalls,* 101 Va. 613, 44 S. E. 896, 99 Am. St. Rep. 923, is relied upon, where it is said: "If an insurance company elects to issue its policy without an application or any representation in regard to the title to the property upon which the insurance is effected the company cannot complain after a loss has ensued that the interest of the insured was not correctly stated in the policy, or that an existing incumbrance was not disclosed"; and for this position *Morotock Ins. Co.* v. *Rodefer,* 92 Va. 747, 24 S. E. 393, 53 Am. St. Rep. 846, is cited. The latter case so holds, and relies upon *West Rockinham Mut. Ins. Co.* v. *Sheets & Co.,* 26 Gratt. 854; *Manhattan F. Ins. Co.* v. *Weill & Ullman,* 28 Gratt. 389, 26 Am. Rep. 364; Wood on Fire Ins., section 383; and Gilmore's Notes on Smith's Mer. L., 293, as authority for that position.

In *West Rockinham Mut. Ins. Co.* v. *Sheets & Co., supra,* the controversy arose out of a vendor's lien upon the property insured of about $1,700, which existed at the time of the insurance, and the court was asked to instruct the jury that "if they believed from the evidence that the plaintiffs, at the time of the procurement of the alleged policy of insurance on which this suit is brought, made any material concealment from the defendant or its agent in regard to the title or liens or incumbrances on the property insured, they must find for the defendant, no matter whether questioned in regard to liens, title or incumbrances or not." The court modified this instruction by inserting therein the words "wilfully, with intent to deceive or defraud," before the words "made any material concealment." Judge Moncure, in discussing this instruction, says: "There is

nothing in the policy which requires a disclosure by the insured of the liens upon the insured property. There was no question propounded by the insurers to the insured in regard to the existence of such liens. The insurers might have examined the records for such liens, and made inquiries about them, either of the insured or others. But they failed to do so. Can they now avoid the obligation of the policy on the ground that the insured, without being inquired of and without any fraud, omitted to give notice of the lien at the time of obtaining the policy? I think they cannot." And he cites for that position Flanders on F. Ins., page 277, which writer says: "In general the insured is only required to disclose the matters inquired about, and not the particulars of his title, unless interrogated in respect thereto, or unless it is made imperative upon him by a condition of the policy. . . . But an untrue answer in an application for an insurance, in reply to a question respecting incumbrances, or the interest of the insured, renders the policy void." In that opinion very many authorities are discussed, and the conclusion is reached which is thus stated in the syllabus: "If a policy of insurance does not require that the insured shall give in the liens or incumbrances on the property insured, or state what is his title to it, and no questions are asked of the insured by the insurer, the policy is not avoided by the failure of the insured, without any fraudulent intent, to mention a lien upon it."

In *Manhattan Fire Ins. Co.* v. *Weill & Ullman, supra,* one of the conditions of the policy of insurance on the building was "If the building insured stands upon leased ground it must be so represented to the company and so expressed in the written part of the policy; otherwise the policy shall be void." *Held:* "The plaintiff may prove that the description of the property was inserted in the policy by the general agent of the company who issued this policy, and that he knew at the time that the building stood upon leased ground."

And about that there is no doubt. As is said in the prin-

cipal opinion: "If the insurance company knew at the time the contract of insurance was entered into that the land on which the insured building was located was not owned by the assured in fee simple the insurance company would be considered as having waived that condition and would be estopped from setting up a breach of it as a defense." In this case it must be remembered that the policy expressly stipulates that it is to be void if the subject of insurance be a building on ground not owned by the insured in fee simple; and that fact distinguishes this case from that of *West Rockingham M. F. Ins. Co.* v. *Sheets & Co., supra,* and brings it within the law as stated in *Manhattan F. Ins. Co.* v. *Weill & Ullman, supra.*

Section 233 of Wood on Fire Insurance is also relied on in *Morotock Ins. Co.* v. *Rodefer, supra;* but section 233 is dealing with applications for insurance and the consequences of failure to set forth the true state of the title in such an application, while in the case for which it was cited there was no application. It is expressly stated, at page 750 that the insurance was effected through an insurance broker, and the policy was issued without the usual written or printed application by the insured, and no representation whatever was made by them, nor was any statement made by or required of them as to their title or interest in the property, or as to the existence of any incumbrance thereon; that there was no evidence of a fraudulent concealment of any matter, and it was not pretended that there was any.

In May on Insurance (4th Ed.), section 288, it is said: "Violation of a condition in the policy that if the building is on leased ground it must be so expressed will be fatal, although no question was asked in the application in respect to the matter. And land held under a lease to A and his heirs and assigns forever, reserving a perpetual rent to the grantor, is a leasehold."

In Ostrander on Fire Ins. (2d Ed.), section 66, page 224, it is said: "When the true ownership is not required to be

stated by the conditions of the policy, generally it will be sufficient if the insured has an insurable interest; but when such requirement is the condition of the policy it becomes a material part of the contract, and all rights under it are forfeited by noncompliance. A failure in such case to disclose truly the interest in the property cannot be regarded an immaterial circumstance. By express stipulations the parties made it material, and the validity of the contract depended upon the compliance with the condition. The assured, by accepting a policy in which such condition is incorporated, becomes bound thereby; and when he claims to enforce the contract and receive its benefits he is estopped from denying his assent to the stipulation." Citing with approval *Brown* v. *Commercial Fire Ins. Co.,* 86 Ala. 189, 5 South. 500. And at the close of the chapter upon "Title and Ownership," among other conclusions arrived at by the author, it is said: "The insured must declare to the insurer his interest in the property covered by the policy, if such interest be less than sole and unconditional ownership."

The law is also so stated in 13 A. & E. Ency. L., page 224; and in Vol. XIX, Cyc. of Law & Procedure, page 689, it is said: "The extent and nature of the title of the insured is an important element in determining the character of the risk. As a consequence, even in the absence of any provision of the policy, a material misrepresentation with reference thereto, on the faith of which the policy is issued, should have the effect of invalidating the insurance. And likewise a concealment amounting to fraud should have the same effect; but the courts early held that there was no obligation on the insurer to specify the nature of his title when it was not asked about, provided he had an insurable interest and acted *bona fide*. However, as the courts have generally been inclined to treat such representation rather liberally for the benefit of the insured, the insurer has sought to strengthen its own position by inserting in the policy various phrases descriptive of the quantity or quality of ownership, each successively of somewhat stricter signification. Such

phrases have, as a general rule, been regarded as valid, but, nevertheless, they have received uniformity a strict and technical construction by the courts. Under such provisions misrepresentation may avoid the policy, although not made with any knowledge of their falsity or an intent to deceive. And the insurer's failure to inquire into the title is likewise immaterial." And at page 692 of the same volume it is said that under a policy providing that the title of the insured must not be other than unconditional and sole ownership, the fact that the insured has an insurable interest exceeding in value the amount of the policy will not prevent a forfeiture.

This whole subject has been very recently considered and all the authorities bearing upon it, pro and con, have been collated in a very instructive opinion in the Supreme Court of Minnesota, in *In Re Millers and Manufacturers Ins. Co.*, 4 L. R. A. (N. S.) 231, 106 N. W. 485. The condition of the policy was that it should be void if the interest of the insured was other than unconditional and sole ownership, or if the building insured should be upon ground not owned by the insured in fee simple. It appears that no inquiry was made by the insurer, that it had no knowledge of the true condition of the title, and the case depended upon a construction of the effect of the condition in the policy just recited. The court held that it was incumbent upon the applicant to disclose the nature of his title; that the insured, by accepting the policy in question, was charged with notice of its contents and bound by its conditions; that the company, by issuing the policy without inquiry, did not waive the conditions as to title and ownership; that an insurance company cannot take advantage of a condition in its policy to avoid payment of a loss when the facts which by its terms invalidate the policy were known to it or to its agent when it issued the policy; but this rule has no application when the facts were not known (what is not known cannot be waived.); and that when a policy of insurance never attaches, and no risk is assumed, the insured may recover back the premiums, unless he

has been guilty of fraud, or the contract is illegal and he is *in pari delicto;* but the insurer is not obliged to return, or offer to return, the premiums which have been paid voluntarily before the notice of the fact that the policy is not in force as a condition precedent to availing itself of its defense to an action on the policy.

We are of opinion that this case correctly states the law, and is in accordance with the decision in *West Rockingham Mut. F. Ins. Co.* v. *Sheets & Co., supra,* and *Manhattan F. Ins. Co.* v. *Weill & Ullman, supra.*

In *Morotock Ins. Co.* v. *Rodefer,* and in *Union Assurance Society* v. *Nalls,* there are general expressions which seem to sustain a contrary view, but we have considered the authorities relied upon in the first case and do not think that they sustain the proposition for which they were cited, and *Union Assurance Society* v. *Nalls* relies wholly upon *Morotock Ins. Co.* v. *Rodefer.* Both of those cases were dealing not with questions of title but with encumbrances, with respect to which the conclusion reached in those cases was proper.

In *Wooddy* v. *Old Dom. Ins. Co.,* 31 Gratt. 362, 31 Am. Rep. 732, in which the opinion was delivered by Judge Burks, the third syllabus states the law as follows: "A condition of the policy is that any interest in property insured, not absolute, or that is less than a perfect title, must be represented to the company and expressed in the policy. The insured has the fee simple estate in the building, conveyed by deed reserving lien for the purchase money, about $350; the house worth $1,700. The condition has reference to the quantity of the interest or estate, which is measured by its duration. Or, if not, the words used cannot have been intended to guard against mere incumbrances."

See also *Manhattan F. Ins. Co.* v. *Weill & Ullman, supra,* which was cited upon another point; there the third syllabus says: "Another condition of a policy of insurance on buildings is 'If the interest of the assured in the property be other than

the entire, unconditional and sole ownership of the property for the use and benefit of the assured, it must be so represented to the company and so expressed in the written part of this policy; otherwise the policy shall be void.' The assured had given a deed of trust upon the building to secure a debt. *Held:* This condition does not refer to the legal title, but to the interest of the assured in the property, that he warranted to be no other than the entire, unconditional ownership of the property. This was no warranty against liens and incumbrances. The assured's interest was the sole ownership. The fact that he had given a deed of trust to secure a debt upon the property does not make the *cestui que trust a* joint owner."

In this case it was made a condition that the policy was to be void "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The conclusion we have reached is as to the effect of such condition, standing alone and unaffected by any circumstances showing knowledge on the part of the insurer or its agent as to the true condition of the title. In this case, as we have seen, the property stood upon the bed of Chesapeake bay.

The statute law of the state (Virginia Code—1904—section 1338) declares that all the beds of the bays, rivers and creeks, and the shores of the sea, shall continue and remain the property of the Commonwealth of Virginia; and, upon a demurrer to the evidence, we are of opinion that the insurer must be held to a knowledge of the true situation, and is therefore estopped from setting up a breach of the condition of the policy as to title as a defense to a recovery for the loss sustained.

This brings us to the consideration of another provision in the policy which was not discussed in the former opinion. It is provided that the policy shall be void "if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises ben-

zine, benzole, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder," etc.

It appears that the property insured was burned on the 4th day of July 1904, and that the fire originated from fireworks which were being exhibited on the pier upon that day. The building, which belonged to and was insured by the Ocean View Pleasure Pier Company, was rented by it to J. H. Livingstone, who subrented a portion of it to Ingleman. A day or two before the fire one Otto Wells approached Ingleman and asked for permission to set off fireworks upon the pier, and Ingleman told him he had no right to grant him the permission, but that he would see Livingstone about it, which he did, and Livingstone told him that Wells might use the pier for that purpose if he would be careful. In pursuance of this permission Wells caused the fireworks to be set off from the pier on the 4th day of July, 1904, and the pier caught fire and was destroyed.

The defendant in error insists that this condition has not been violated for two reasons: First, because the defendant in error is not responsible for the act of its tenant in permitting fireworks to be exhibited upon the pier; and, secondly, because the exhibition of fireworks upon the pier was not a violation of the condition that fireworks were not to be "kept, used or allowed" on the premises.

With respect to the first proposition, if authority be needed, the case of *Liverpool & London & Globe Ins. Co. v. Gunther,* 116 U. S. 113, 29 L. Ed. 575, 6 Sup. Ct. 306, would seem to be conclusive. "Where the policy contained conditions that if the assured should keep or use certain prohibited articles without written permission the policy would be void, and that certain articles should not be stored, used, kept or allowed on the premises, temporarily or permanently, for sale or otherwise, unless with written permission indorsed on the policy, a violation of these prohibitions by any one permitted by the assured to occupy the premises is a violation by the assured himself."

The fact that the defendant in error had no knowledge that fireworks were to be used upon the pier is of no consequence.

As was said in *Kelly* v. *Worcester Mut. F. Ins. Co.,* 97 Mass. 284: "A policy of insurance obtained upon a building by the owner, and containing a proviso that it shall be void if the building shall be occupied or used for unlawful purposes, is avoided by a tenant's use of the building for an unlawful purpose, even if without the owner's knowledge."

In *Fire Asso.* v. *Williamson,* 26 Pa. St. 196, it is said: "Neither is it material that the landlord did not know that his tenant kept gunpowder. His contract with the insurance company was that it should not be kept without permission, and it was his business to see that his tenants did not violate the contract in this respect."

There is no doubt that in this case the condition was broken and that its breach was the direct cause of the loss; and under the authorities just cited we think there is equally as little doubt that the defendant in error was responsible for the act of its tenant in permitting the prohibited articles to be used upon the premises. It was not only permitted by the tenant, but permitted with actual knowledge that he had no right to grant the permission, and only after he had taken, as he thought, due precautions for his own protection from loss.

Reliance is placed by defendant in error also upon *London &c. F. Ins. Co.* v. *Fischer,* 92 Fed. 500, in which the opinion was delivered by Judge Taft. In that case the condition of the policy was that it should be void if "there be kept, used or allowed gasoline" on the premises. It was held that the word "allowed" was to be construed as meaning "allowed to be kept or used," and that the condition was not violated by permitting gasoline to be carried through the building on the premises. But here the prohibited article was carried on the premises, not through them, and was used upon the premises, and the prohibited use was the sole cause of the loss sustained. It was a lawful condition clearly expressed and recklessly violated, and

if it be not sufficient to protect the insurance company against loss, it would seem to be an idle task to write conditions into a policy.

We are of opinion that the judgment should be reversed.

*Reversed.*