# Richmond

## THE NORTH RIVER INSURANCE COMPANY v. MARION BELCHER.

November 13, 1930.

Present, Prentis, C. J., and Campbell, Epes, Hudgins and Gregory, JJ.

*William G. Werth* and *Roland E. Chase*, for the plaintiff in error.

*John W. Flannagan, Jr.*, and *C. R. McCoy*, for the defendant in error.

Epes, J., delivered the opinion of the court.

Marion Belcher (hereinafter called the plaintiff) instituted, by notice of motion for judgment, an action in the Circuit Court of Dickenson county against The North River Insurance Company (hereinafter called the defendant), to recover on an insurance policy issued by the de-

fendant for the loss by fire of his dwelling and the furniture and other personal property therein. Judgment was rendered in favor of the plaintiff against the defendant for $2,500; and the case is here on a writ of error granted to the defendant.

Copies of the policy sued on and the proof of claim filed by the plaintiff were attached to the notice as exhibits and made a part thereof.

The defendant demurred to the notice, whereupon the plaintiff asked leave to amend. The defendant then renewed its demurrer to the notice as amended, and also moved the court to dismiss the action on the ground that the notice showed that the policy sued on was void and unenforceable from its inception. The court overruled said demurrers and said motion.

Assignments of error Nos. 1 to 5, inclusive, relate to the rulings of the court on the pleadings; but we shall defer any discussion thereof until after we have stated the facts of the case.

Upon the trial of the case the defendant took four exceptions to the admission of evidence and two to the exclusion of evidence. Assignments of error numbered 6 to 11, inclusive, relate to these exceptions.

Assignments of error Nos. 6, 7, 8 and 11 relate to the admission of evidence introduced by the plaintiff for the purpose of showing that J. C. Mullins, who procured the application for the policy here in issue, was the agent of the defendant. Assignment of error No. 10 relates to the exclusion of evidence tendered by the defendant for the purpose of showing that Mullins was not its agent. In the view which we take of this case, the plaintiff is not entitled to recover, even if it be admitted that Mullins was the agent of the defendant; and final judgment must be here entered for the defendant. Hence, as no useful purpose can be served by a discussion of these assignments of error, we shall not notice them further.

After all the evidence of both the plaintiff and the defendant had been introduced, the defendant demurred to the evidence. Thereupon the question of damages was submitted to the jury under an instruction given by the court; and the jury returned a verdict for the plaintiff for $2,500, the full amount of the policy sued upon, subject to the opinion of the court on the demurrer.

The court overruled the demurrer to the evidence and entered judgment for the plaintiff on the verdict of the jury.

Assignment of error No. 12 relates to the instruction given to the jury by the court, and No. 13 to the refusal of the court to give the jury an instruction requested by the defendant. Assignments of error Nos. 14 and 15 relate to the action of the court in overruling defendant's demurrer to the evidence, and refusal to enter judgment for the defendant.

It is questionable whether the evidence can be said to be sufficient to establish the fact that J. C. Mullins, who procured the application for this policy, was, at the time he procured such application and the policy was issued, the agent of the defendant. But, as that is the conclusion most favorable to the plaintiff, for the purposes of this case we shall treat him as the duly qualified soliciting agent of the defendant, authorized to solicit insurance to be written by the defendant through its general agent, Tazewell Insurance Agency, Incorporated.

The other material facts established by the evidence are as follows:

By deed dated July 20, 1890, J. L. Sifers and his wife conveyed to their daughter, Martha E. Puckett, "for her natural life, and at her decease to the heirs of her body" a tract of land near Haysi, in Dickenson county, Virginia, containing 191 acres.

Martha E. Puckett is the wife of John W. Puckett, and

had nine children. Eight of them are living. One daughter, Bessie, has died leaving three children, the oldest of whom is fourteen or fifteen years of age, and the youngest three years of age.

Marion Belcher married Una Puckett, one of the daughters of said Martha E. Puckett. After their marriage they moved into an old house on said 191 acre tract, and lived in it for about three years. While they were living there Martha E. Puckett and her husband, John W. Puckett, told Marion Belcher and Una Belcher that if they wanted to build at the old house place, they could do so; and they would give them an acre of land, and "when they made the divide they would give'' them their part of the 191 acres, 18 acres more, around the house.

The acre was to include the old house and the site near by upon which Marion Belcher afterwards built; but the boundaries of the acre were never more accurately determined or laid off, and no deed or written contract was executed by Martha E. Puckett to Marion Belcher and/or Una Belcher for any part of said 191 acre tract of land.

In 1924, Marion Belcher purchased the materials, and by his own labor and at his own expense, built, near said old house, a six-room, one-story, frame dwelling, into which he moved and in which he was living at the time it was destroyed by fire.

In April, 1929, after having spoken to Marion Belcher about taking out insurance through him on said dwelling and the personal property therein, Mullins saw Mr. John W. Puckett, and told him he was going up to see Marion Belcher about writing him this insurance; and asked him if the title to Marion Belcher's property was in Marion Belcher or his wife, or both. Mr. Puckett told him the title was in Martha E. Puckett, but that he and his wife intended to give Marion Belcher and his wife an acre of land, including his house site, but that they had not made a deed to them for it.

On April 26, 1929, Mullins went to the home of Marion Belcher, and there procured from him an application for $3,500 fire insurance on his said dwelling and $500 on his furniture, etc., therein, which he mailed to Tazewell Insurance Agency, Inc., Tazewell, Virginia. While the application is addressed to Clinch Valley Insurance Agency, Inc., that fact is immaterial here. This application reads as follows:

"April 26, 1929.

"CLINCH VALLEY INSURANCE AGENCY, INC.,

"Tazewell, Virginia.

"DEAR SIRS:

"The following application is presented for your careful consideration for insurance against loss or damage by fire on the property specified below.

"Respectfully,

(Signed)   "J. C. MULLINS.

"Insurance is Wanted—One-fourth-mile from station

"By Marion Belcher, of Southern Haysi, in the sum of $3,500 on six-room dwelling and $500 on furniture. Want this contract for three years, rate advised ninety-eight cents to $1.00 per hundred.

"If owner or occupant is negro or foreigner advise fully. American, White.

(Signed)   "MARION BELCHER."

On the back of the application under the heading "Questions to Agents" appear, among others, the following questions, the answers to which are in the handwriting of J. C. Mullins:

"What is the present cash value?   $4,500.

"What is nature of title?   Good.

"Is the property occupied by owner or tenant?   Owner.

"Do you unqualifiedly recommend both the risk and the assured?   Yes."

Mullins filled out the answers to "Questions to Agents" at the time the application was signed by Marion Belcher from information given him by Belcher. When Mullins reached the question: "What is the nature of title?" He asked Belcher: "How the title was," and "If the title was good." Belcher said: "Yes;" and then explained to Mullins that Martha E. Puckett and her husband had given the acre of land on which the house stood to him and his wife, but had not made them a deed for it.

In the course of this conversation about the title to the property Mullins told Marion Belcher that he (Mullins) had been talking to John W. Puckett about the title to the property, and it would be all right for him to take out insurance on it. Mullins then wrote as the answer to the question, "What is the nature of title?" "Good."

Neither John W. Puckett nor Marion Belcher told Mullins that Mrs. Martha E. Puckett had only a life estate in this land; and that the remainder therein was vested in her eight living children and the children of her deceased daughter; and so far as the record discloses, Mullins did not have this information from any other source. Marion Belcher testifies that he (Belcher) did not know that Mrs. Puckett had only a life estate in the land, and his wife testifies that she did not know it.

In an attempt to bring home to Marion Belcher knowledge or notice that Mrs. Martha E. Puckett had only a life estate in this tract of land, the defendant asked John W. Puckett if it was not a fact that it "is generally known by everybody around Haysi how this deed was made?" To which he replied: "Yes." It then asked him: "Everybody around Haysi knows this deed is made to your wife and then to her heirs?" To which he replied: "I don't know." On motion of the plaintiff these questions and answers were stricken out as irrelevant and immaterial. This action of the court constitutes assignment of error No. 9. The court, we think, did not err in this ruling.

Marion Belcher did not sign nor was he asked to sign the answers to said "Questions to Agents;" but after Mullins had written his answers to the "Questions to Agents," he read over the questions and answers to Marion Belcher before Marion Belcher signed the application on the reverse side.

Neither the Tazewell Insurance Agency, Inc., the general agent of the defendant, nor the defendant had any information with reference to Marion Belcher's interest in or title to this property other than the statement of Mullins in his answer to said question that it was "good."

On April 27, 1929, Tazewell Insurance Agency, Inc., wrote Mullins acknowledging receipt of said application, and stating that it had reduced the amount of the insurance on the dwelling of Marion Belcher to $2,000, as they thought $3,500 was too much insurance on a six-room dwelling; and enclosed a policy, issued by the North River Insurance Company and countersigned by Tazewell Insurance Agency, Inc., insuring Marion Belcher in the sum of not exceeding $2,500 against loss and damage by fire to said dwelling and the furniture, etc., therein, the insurance being distributed $2,000 on the dwelling and $500 on the furniture and other personal property therein. J. C. Mullins delivered this policy to Marion Belcher, and on May 2, 1929, collected the premium thereon and receipted therefor, signing the receipt "J. C. Mullins, agent."

The contract of insurance on this property is the standard form of fire insurance policy prescribed by the General Assembly of Virginia by the act of 1928 (Acts 1928, pages 763–766, chapter 256, section 1, 1928 Supp. Va. Code, section 4305a); and contains the following provisions:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, * * (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned in fee simple; * * *.

"Waiver: No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirement, act or proceeding on the part of this company relating to appraisal or to any examination herein provided for; * *."

On May 15, 1929, the said dwelling and practically all the furniture, etc., therein was totally destroyed by fire.

A few days prior to May 31, 1929, Marion Belcher met an insurance adjuster in the office of Mr. McCoy, counsel for Marion Belcher. What occurred at that meeting does not appear, except that Marion Belcher then asked the adjuster for forms on which to make out proof of his loss, which the adjuster refused to furnish him.

On May 31, 1929, Marion Belcher wrote by registered mail to the North River Insurance Company at its home office in New York City, referring to said policy and the fact that the property insured thereunder had been destroyed by fire, and asking that the company send him blank forms on which to render proof of loss.

Under date of June 12, 1929, the company mailed to Marion Belcher forms for proof of loss, accompanied by a letter stating that the forms were being sent "as a matter of courtesy" and "without waiving or intending to waive any of the rights of the company, and without admitting or denying liability."

Some light is thrown on the action of the company in this respect by the fact, that in its ground of defense it states that one of its defenses to this action is, that "the property included in this policy was insured for the purpose of obtaining the insurance on the same;" and "was burned either by the insured himself or by and through

his own carelessness, or by some one else for the insured so as to collect this policy." The insurance company, however, introduced no evidence tending to prove these allegations, nor is there any evidence in the record tending to prove them.

On June 26, 1929, Marion Belcher mailed to the North River Insurance Company at its home office proof of loss under said policy.

In said proof of loss the following statement is made with reference to the title to the land upon which the dwelling stood:

"Marion Belcher erected said dwelling house on a tract of land formerly owned by Martha Puckett, which land was given to the said Marion Belcher by the said Martha Puckett, but the said Martha Puckett had not actually made the said Marion Belcher a deed to the said tract of land, but these facts were made known to the insurer through its agent prior to the issuance of said policy. * * No other party or parties owned any part thereof or had any interest in the said dwelling house."

On August 10, 1929, W. G. Werth, the adjuster for North River Insurance Company, wrote Marion Belcher as follows:

"We beg to acknowledge receipt of paper purporting to be proof of loss showing your claim against the North River Insurance Company by reason of fire of May 15, 1929.

"Without waiving any rights or defenses which the above company might otherwise have, we request that you file with us further information as follows:

"1. Itemized detailed estimate of the cost to replace the involved dwelling of the same materials and workmanship as originally constructed.

"2. A statement from you as to whether or not any other insurance upon the same property has ever been cancelled by any insurance company or its agents."

In response to this request Marion Belcher employed a contractor to prepare a detailed estimate of the cost to replace the said dwelling and mailed it to the insurance company.

A copy of said policy and a copy of said proof of loss was attached and expressly made a part of the notice of motion for judgment; and in the notice of motion for judgment the following allegation with reference to the insured's interest in and title to the property covered by the policy is made:

"The legal title to the land upon which the house was erected was not in the plaintiff, but said land was given *to the plaintiff* by J. W. and Martha Puckett, * * prior to the date of the issuance of said policy, but a deed had not been made, and the house was built by the plaintiff at his own costs and expenses, and all these facts were made known to the agent of the said defendant prior to obtaining the policy of insurance."

After the insurance company had filed its demurrer and grounds of defense, the plaintiff was permitted to amend his notice so as to allege that "said land was given *to the plaintiff and his wife, Una Belcher*, by J. W. and Martha Puckett," instead of to him alone.

The second assignment of error is that the court erred in permitting the notice of motion for judgment to be amended as above mentioned, because the allegations in the amended notice that J. W. and Martha Puckett had given the one acre of land on which this building stood to Marion Belcher and his wife, Una Belcher, is contradictory of Marion Belcher's sworn statement in his proof of loss, a copy of which is appended to and made a part of this notice, that Martha Puckett had given this acre of land to him, Marion Belcher.

This assignment of error is not well made. The action of the court in permitting this amendment to be made was in furtherance of justice, and in accordance with the spirit

of the provisions of section 6104 of the Virginia Code, which authorizes the trial court, in furtherance of justice, to allow the pleadings to be amended at any stage of the trial and directs the court to disregard any error or defect which does not affect the substantial rights of the parties. The case of *C. & O. Rwy.* v. *Rison,* 99 Va. 18, 37 S. E. 320, the only case cited by the plaintiff in error in support of its position, has no application to the facts in this case.

The first and third assignments of error are that the court erred in overruling the demurrers to the original and amended notices, respectively, and the fourth assignment of error is that the court erred in overruling the motion made by the defendant, before any evidence was introduced, to dismiss the motion for judgment.

The ground relied upon in these assignments of error to sustain said demurrers and said motion is, that the notice, as originally filed and as amended, shows in the allegations therein above quoted that the interest of the insured in the building insured was not the unconditional and sole ownership thereof, and that the subject of insurance was a building on ground not owned in fee simple by the insured, and that, therefore, by the terms of the policy it was void from its inception.

The court did not err in holding that the demurrers and motion to dismiss cannot be sustained on this ground.

Under the allegations of both the original notice and the notice as amended, the plaintiff had an insurable interest in the property insured; and both allege that the facts therein stated with reference to the insured's interest in the property insured, and his title to the land upon which the insured building stood, were made known to the agent of the defendant prior to the issuance of said policy. This, if true, estopped the defendant from asserting that the facts alleged in said notice with reference to the plaintiff's interest and title rendered the policy void from its inception.

■ The well established rule, in cases such as this, is that where prior to the issuance of a policy containing the provisions hereinabove quoted, the insurer, or its agent, has knowledge, actual or imputed, of facts which under the express terms of the policy render it void or unenforceable from its inception, and then issues the policy, it is equivalent to an assertion by the insurer that such facts do not invalidate the policy, and, if the insured has acted in good faith, the insurer is thereby estopped, after loss, from claiming that *such facts* avoid its liability thereunder. *Virginia F. & M. Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 46 S. E. 463, 102 Amer. St. Rep. 846; *Mutual F. Ins. Co.* v. *Ward*, 95 Va. 231, 28 S. E. 209; *Morotock Ins. Co.* v. *Pankey*, 91 Va. 259, 21 S. E. 487. See also *North River Ins. Co.* v. *Lewis*, 137 Va. 322, 119 S. E. 43; *Royal Ins. Co.* v. *Poole*, 148 Va. 363, 138 S. E. 487.

■ The act of 1928, entitled "an act to prescribe the form and require the use of a standard fire insurance policy in the State of Virginia" (Acts 1928, pages 763–766, chapter 256, section 4305a, 1928 Supp. Va. Code), has not abrogated the application of the rule of estoppel above stated. *Mercer* v. *Germania Fire Ins. Co.*, 88 Or. 410, 171 P. 412, construing chapter 175, General Laws of Oregon, 1911, page 279, which is very similar to the Virginia act of 1928; *Gregerson* v. *Phenix Fire Ins. Co.*, 99 Wash. 639, 170 Pac. 331, L. R. A. 1918E, 521; *Gazzan* v. *Germania Union F. Ins. Co.*, 155 N. C. 330, 71 S. E. 434, Ann. Cas. 1912C, 362; *Leisen* v. *St. Paul F. & M. Ins. Co.*, 20 N. D. 316, 127 N. W. 837, 30 L. R. A. (N. S.) 539; *Farley* v. *Spring Garden Ins. Co.*, 148 Wis. 622, 134 N. W. 1054.

Said act first establishes what is known as the New York Standard Policy as the "standard fire insurance policy of the State of Virginia," and requires its use. It then provides as follows:

"And no other or different provision, agreement, condition or clause shall be in any manner made a part of such

contract or policy or endorsed thereon or added thereto, or delivered therewith, except as follows" (here follow in paragraphs headed "First" and "Second" certain exceptions, which are here immaterial, and then the act proceeds):

"Third. There may be printed in the space indicated by the words 'space for description of property,' or added to the policy at such space by agreement in writing thereon or by rider attached thereto the following: 1. Descriptions and specifications, by schedule or otherwise, of the property covered by the policy; 2. The extent of the application of insurance under the policy; 3. The extent of the contribution to be made under the policy in case of loss or damage; 4. Any other matter necessary clearly to express all the facts and conditions of insurance on any particular risk; provided, however, that no such agreement or rider shall be inconsistent with or a waiver of any of the conditions or provisions of the standard fire insurance policy hereby established, except that in case of a mortgagee not named in the policy as the insured, such provisions may be added as shall not be inconsistent with or a waiver of any of the provisions of the said standard policy relating to mortgage interests, but if so added shall include the provisions of a standard rider or endorsement relating to such interest, the form of which shall have been approved by the State Corporation Commission and filed in the office as hereinafter provided."

The fact that by said act the New York Standard Policy is established as the standard policy for use in Virginia, and its use is thereby required, in no way changes the effect of the policy, nor does it abrogate or modify the rules of law or construction applicable thereto; and the provisions of the act above quoted have no application to estoppels, such as this, which arise in law because essential to fair dealing.

The purpose of the General Assembly in passing the act of 1928 prescribing a standard policy, and requiring its

use, was to assure in all cases a fair and equitable contract of insurance between the parties, and not to cut off estoppels designed to prevent fraud or imposition, which had theretofore been enforced by the courts in cases in which the policy in question contained the same provisions as those which are contained in the standard policy prescribed by the act.

The fifth assignment of error is, in effect, that the court erred in not sustaining the objection of the defendant to the notice of motion for judgment, because under the said act of 1928 a policy is rendered void if the interest of the insured is other than unconditional and sole ownership, or if the subject of insurance be 'a building on ground not owned in fee simple, unless otherwise provided by agreement in writing added thereto, even though the insurer, or its agent, may have been fully advised with reference to all the facts regarding the interest and title of the insured and the insured has acted in good faith.

This assignment of error is without merit for the reasons above stated.

The policy here in question contained a three-fourths value clause; and the property insured was a total loss. After the defendant had demurred to the evidence, the court instructed the jury that if they believed from the evidence that at the time of the fire the value of the building destroyed was at least $2,666.67, and the value of the furniture, etc., covered by the policy which was destroyed was at least $666.67, then it should find in favor of the plaintiff for the full amount of the policy, to-wit, $2,500, with interest from August 18, 1929.

The twelfth assignment of error is that the court erred in giving this instruction, because the jury should have been instructed to find *the value* of the property destroyed.

The thirteenth assignment of error is that the court erred in refusing to give an instruction tendered by the

defendant, which directed the jury that it should "separately determine and report in its verdict the *total cash value* of the household furniture in the involved dwelling at the time of the fire; the amount of direct loss and damage to said furniture by reason of the involved fire; and the *actual cash value* of the dwelling destroyed, at the time of the fire." (Italics ours.)

■ The court did not err in its rulings complained of in the twelfth and thirteenth assignments of error. Where there has been a demurrer to the evidence in such a case, the office of the jury is to find the amount which the plaintiff is entitled to recover, if the court be of opinion that he is entitled to recover anything, and not the value of the property destroyed.

The fourteenth and fifteenth assignments of error make the point that the court erred in overruling defendant's demurrer to the evidence because the policy of insurance here in issue provides: "This entire policy shall be void, unless otherwise provided by agreement in writing added thereto—(a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple;" and the evidence shows that these conditions were broken at the time the policy was issued.

The questions here raised are different from those raised on the demurrers to the notice of motion for judgment.

■ The points here made by the defendant are, that the evidence shows that in addition to the deficiencies in interest and defects in the title of Marion Belcher of which Marion Belcher and John W. Puckett informed defendant's agent, Mullins, there were other deficiencies in the interest and defects in the title of Marion Belcher, resulting from facts which were independent of the facts disclosed by Marion Belcher and John W. Puckett to Mullins, of which the defendant had no knowledge, actual or imputed; and

that the deficiencies in the interest and defects in title of Marion Belcher resulting from these facts which were unknown to the defendant, constitute a breach of said conditions in said policy which have not been waived by the defendant and the defendant is not estopped from relying thereon.

This contention is well made. The court erred in not sustaining the demurrer to the evidence on this ground.

The contentions of the plaintiff in support of the action of the trial court in overruling the demurrer are as follows:

(1) It contends that by the issuance of this policy after the disclosures made to J. C. Mullins, the soliciting agent of the defendant, by the plaintiff and John W. Puckett, with reference to the plaintiff's interest and title, the defendant waived said provisions of the policy, and is now estopped from relying thereon.

(2) It contends that the fact that the defendant requested the plaintiff to have prepared the further information asked for in the letter, dated August 10, 1929, written by W. G. Werth, the defendant's adjuster, to the plaintiff (see *ante*), in response to which the plaintiff employed a contractor to prepare an estimate of the cost to replace the burned building, and sent it to the defendant, constituted a waiver by the defendant of said provisions in said policy.

These provisions in a policy with reference to the interest and title of the insured, are valid under the common law, and by virtue of the standard policy act of 1928 (Acts 1928, pages 763–766, chapter 256) are now by statute not only permitted, but required to be included in every Virginia fire insurance policy; and the insured accepting a policy in which they are included is bound thereby, unless the insurer by a binding waiver or by virtue of an estoppel is precluded from relying thereon, or upon the specific breach thereof. *Westchester Ins. Co.* v. *Ocean View Co.*,

106 Va. 633, 56 S. E. 584; *Virginia F. & M. Ins. Co.* v. *Case*, 107 Va. 588, 59 S. E. 369, 122 Amer. St. Rep. 875; *Palmetto Fire Ins. Co.* v. *Fansler*, 143 Va. 884, 129, S. E. 727.

■ The delivery by an insurer of a policy containing these provisions. without having made inquiry as to the interest or title of the insured, does not constitute a waiver of these provisions or estop the insurer from relying thereon, where the insurer has no knowledge, actual or imputed, of the fact that the interest of the insured is other than the unconditional and sole ownership or that the building stands upon ground not owned in fee simple by the insured. *Westchester Fire Ins. Co.* v. *Ocean View Co.*, 106 Va. 633, 56 S. E. 584.

■ Where the insurer has knowledge, actual or imputed, of certain facts which render the interest of the insured other than the unconditional and sole ownership, or his title not a fee simple title, and thereafter issues a policy containing said provisions, it is thereby estopped, after loss, from relying upon such facts, or the breach resulting from the existence of such facts, as a defense to recovery under the policy. But the issuance of the policy under such conditions does not constitute a waiver of said provisions nor estop the insurer from relying thereon, so as, in effect, to eliminate said provisions from the policy. It estops the insurer only from asserting that the facts of which it has knowledge, actual or imputed, constitute a breach of these provisions, and from relying, after loss, upon the breach resulting from the existence of the facts of which it has knowledge, actual or imputed, as a defense to recovery under the policy. If there be other facts of which the insurer has no knowledge, actual or imputed, the existence of which, independent of the facts known to it, constitute a breach of such provisions, the insurer by issuing the policy neither waives the right to insist thereon

as a defense to a recovery under the policy, nor is it estopped from relying thereon. This is true whether the knowledge, actual or imputed, of the insurer has been received from an application made by the insured or from inquiries made by the insurer of the insured as to his interest or title, or has been otherwise acquired. *Planters' Mutual Ins. Co.* v. *Loyd*, 67 Ark. 584, 56 S. W. 44, 77 Am. St. Rep. 136; *Independent School Dist.* v. *Fidelity Ins. Co.*, 113 Iowa 65, 84 N. W. 956; *Hartford F. Ins. Co.* v. *Ransom* (Tex. Civ. App.), 61 S. W. 144; *Moore* v. *Mutual Reserve, etc., Asso.*, 133 Mich. 526, 95 N. W. 573; *Fire Asso. of Philadelphia* v. *Flournoy*, 84 Tex. 632, 19 S. W. 793, 31 Am. St. Rep. 89; *Kelly* v. *Liverpool, etc., Ins. Co.*, 102 Minn. 178, 111 N. W. 395; affirmed on reargument 102 Minn. 178, 112 N. W. 870, 1019; 5 Cooley's Briefs on Insurance, pages 3955–3960, 4033–4039, 4089, 4236.

The defendant is estopped from setting up the fact that Martha E. Puckett and her husband had not, in accordance with their oral promise, made a deed to Marion Belcher and his wife for the acre of land upon which the insured building stood, or the fact that the promise of Martha E. Puckett and her husband was to give this acre of land to Marion Belcher and his wife and not to him alone. The defendant's agent had knowledge of these facts when the policy was issued, and the defendant is estopped to rely upon any breach of said conditions in the policy predicated thereon.

But these are not the only deficiencies of unconditional and sole ownership by Marion Belcher of this acre of land or the only defects in his title thereto. Martha E. Puckett had only a life estate in the tract of land from which the acre here in question was to be cut off, and the remainder therein belonged equally to the nine children of Martha E. Puckett, of whom Mrs. Belcher was one. Hence had Mrs. Puckett and her husband executed a deed for this acre of

land to Marion Belcher and his wife, they would not then have had the unconditional and sole ownership thereof, either legal or equitable.

So far as this record discloses neither the defendant nor its agent had any knowledge, actual or imputed, of these additional deficiencies of ownership and defects in title, which are independent of any of the deficiencies of interest or defects in title which were disclosed to defendant's agent by Marion Belcher and John W. Puckett. Therefore, the defendant cannot be deemed to have waived the right to rely on said additional deficiencies of interest and defects in title by having issued said policy after having received the information given Mullins by Marion Belcher and John W. Puckett, nor is it estopped thereby to rely thereon.

The contention of the plaintiff that the defendant, by requesting the plaintiff to furnish it an estimate of the cost to replace the building, waived the right to insist upon the breach of the conditions of the policy with reference to the interest and title of the insured, falls for the same reason. There is no evidence even tending to show that at the time this request was made the defendant had any knowledge, actual or imputed, of the facts that Mrs. Puckett had only a life estate in the tract of land upon which this building stood, and that the remainder therein was vested in her eight living children and the infant children of her deceased daughter, by reason of which facts a deed from Mrs. Puckett and her husband to Marion Belcher and his wife could not convey to them the unconditional and sole ownership or the fee simple title to the land upon which this building stood.

"The general principle that there can be no waiver without a knowledge of the right waived is applicable to a waiver of the forfeiture by acts of the company inducing the insured to go to trouble or expense in the proof of loss." 5 Cooley's Briefs on Insurance, page 4469. See also *Bonne-*

*ville* v. *Western Assur. Co.*, 68 Wis. 298, 32 N. W. 34; *Syndicate Ins. Co.* v. *Bohn* 12 C. C. A. 531, 65 Fed. 165, 27 L. R. A. 614; *Georgia Home Ins. Co.* v. *Rosenfield*, 37 C. C. A. 96, 95 Fed. 358; *Hartford Fire Ins. Co.* v. *Enoch*, 72 Ark. 47, 77 S. W. 899; *Security Ins. Co.* v. *Mette*, 27 Ill. App. 324; *Finley* v. *Lycoming, etc., Co.*, 30 Pa. 311, 72 Amer. Dec. 705; *Smeesters* v. *New Denmark, etc., Co.*, 177 Wis. 41, 187 N. W. 986.

This is not a case in which the company made the request with full knowledge of all the facts which constituted a breach of the provisions in the policy as was the case of *Virginia F. & M. Ins. Co.* v. *Goode*, 95 Va. 762, 30 S. E. 370, cited by the appellant.

The court should have sustained the demurrer to the evidence. The judgment of the court will be reversed and judgment here entered for the plaintiff in error, the defendant below.

*Reversed.*