# Richmond.

## FOREMAN, FOR, ETC., v. THE GERMAN ALLIANCE INSURANCE ASSOCIATION.

### December 14, 1905.

1. INSURANCE—*Payment of Premium—Evidence.*—Where it is material to prove the date at which an insurance premium was paid, and the same person was agent of both insurer and insured, and as agent of the latter advanced the premium on a policy, a receipt subsequently given by the agent to the assured for the amount so advanced which does not purport to have been given by him in his capacity as agent of the insurer and which is shown by the agent not to have been so given, but for money advanced by him, cannot be given in evidence in an action on the policy.

2. INSURANCE—*Forfeiture of Policy—Subsequent Acts and Declarations —Estoppel.*—Any acts, declarations or course of dealing by an insurance company, with knowledge of facts constituting a breach of a condition in a policy, leading the insured honestly to think that by conforming to the terms of the policy a forfeiture thereof will not be incurred, followed by due conformity on his part, will estop the insurance company from insisting upon the forfeiture, though it might be claimed under the express letter of the policy.

3. PRINCIPAL AND AGENT—*Common Agent of Two Principals—Imputed Knowledge—Burden of Proof.*—Where a waiver is sought to be established in consequence of the imputed knowledge of an agent, and the same person is agent for two principals, knowledge acquired by him while acting as the agent of one, in order to be binding on the other, must have been present in the agent's mind at the time he did the act which it is claimed constituted a waiver by such other, and the burden is on the party relying upon the waiver to prove this. The proof, however, may consist of circumstances as well as direct evidence.

4. Insurance—*Policy—Breach of Condition—Waiver—Estoppel.*—Mere
knowledge by an insurance company of the existence of a breach
of the contract of insurance does not of itself amount to a waiver,
or an estoppel. There must exist, in addition to such knowledge,
some positive act of confirmation, upon which, in connection with
such knowledge, a waiver may be predicated, and by force of which
the broken cantract may be said to be revived.

Error to a judgment of the Law and Chancery Court of the
city of Norfolk, in an action of *assumpsit.* Judgment for the
defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Robert W. Matlett,* for the plaintiff in error.

*White, Tunstall & Thom,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

This was an action of assumpsit instituted against the German
Alliance Insurance Association, on a fire insurance policy, by
C. B. Foreman, for the benefit of the Prudential Building and
Loan Association.

The defense of the insurance company was that the premises,
after the policy had been issued, became and remained vacant,
in violation of that condition of the policy which declared that
the entire policy shall be void if the building therein described
be or become vacant or unoccupied for ten days.

The plaintiff admitted such vacancy, but claimed that the
forfeiture resulting therefrom had been waived by the insurance
company.

Upon the trial of the cause, the defendant, without introduc-
ing any evidence, demurred to the plaintiff's evidence. The
court sustained the demurrer, and gave judgment for the de-
fendant. To that judgment this writ of error was awarded.

It appears that the policy, which was for one year, was issued on or about the 8th of May, 1902, through Albert Morris & Co., the general agents of the insurance company in the city of Norfolk. A like policy had been taken out by the insured for the previous year, but upon his informing the Building and Loan Association, which had a mortgage upon the property, that he could not pay the premium upon a policy for another year that association took out the policy sued on in his name, with a provision that the loss, if any, should be payable to the Building and Loan Association as its interest might appear. Albert Morris & Co. were also agents in that city for the Prudential Building & Loan Association, and were authorized to pay the premiums on policies of insurance in which it was interested, when such premiums fell due and were not paid, and could not be collected by them from the insured. The premium on the policy sued on not having been paid by the insured, Albert Morris & Co. paid it to the insurance company on the 5th of June.

On the 5th of July the insured vacated the premises, and between that time and the 10th of that month gave the key of the house to Albert Morris & Co., as the agents of the Prudential Building and Loan Association, informing them that he could not keep up the payments due the Building & Loan Association on its loan secured upon the property. Albert Morris & Co. about two weeks after that, notified him that if he did not pay the premium they would have to collect it from the Building & Loan Association. The insured did not pay them, nor did he know at that time that they had paid the premium to the insurance company under their agreement with the Building and Loan Association. Between that time and the following October, that association settled with or repaid Albert Morris & Co. the amount which they had advanced in paying the premium on the policy.

In November of that year, the buildings on the premises were destroyed by fire. When the insurance company was notified of the loss, it at once denied its liability on the ground that the vacancy clause in the policy had been violated.

During the trial the plaintiff offered to read to the jury a receipt dated in October, 1902, given to the Building & Loan Association by Albert Morris & Co., for $83.00, the aggregate amount of the premiums on eight insurance policies, one of which was the premium on the policy sued on. The receipt was objected to on the ground that it did not purport to have been given by Albert Morris & Co. as agents of the insurance company. The court sustained the objection and refused to allow the receipt to be read in evidence. That action of the court is assigned as error.

The receipt not only did not show upon its face that it was given by Albert Morris & Co. as the agents of the insurance company, but it appeared from the evidence of Albert Morris, who executed the receipt for his firm and proved their signature thereto, that the receipt was given by his firm not as the agents of the insurance company, but for insurance premiums which they had paid or advanced for the Building & Loan Association under its agreement with them, on policies in which it was interested. This being so, the court was clearly right in not admitting the receipt in evidence.

The next question to be determined is, has the plaintiff shown that the forfeiture was waived?

It is well settled that any acts, declarations or course of dealing by an insurance company, with knowledge of facts constituting a breach of a condition in the policy, leading the party insured honestly to think that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the insurance company from insisting upon the forfeiture, though it might be claimed under the express letter of the policy. *Georgia Home Ins. Co.* v. *Goode,* 28 Gratt. 88; *Morotock Ins. Co.* v. *Pankey,* 91 Va.

259-60, 21 S. E. 487; *Va. Fire, &c., Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 433, 46 S. E. 463, 102 Am. St. Rep. 846, and cases there cited; *Ins. Co.* v. *Eggleston,* 96 U. S. 572, 24 L. Ed. 841.

Applying that principle to the facts of this case, it is manifest, we think, that the plaintiff in error has failed to show that the insurance company has waived or estopped itself from relying upon the forfeiture set up as a defense.   The premium was paid on June 5, and the building did not become vacant until July 5, and there is no evidence that the insurance company knew that it became vacant before the fire occurred.

It is argued that its agents, Albert Morris & Co., knew that it was vacant, and that their knowledge was notice to the insurance company.   It is true that Albert Morris & Co. did know it, but that knowledge was acquired by them as agents of the Building and Loan Association, and not while attending to the affairs of the insurance company.   Knowledge acquired in that manner, in order to be binding upon the insurance company, would have to be present in the agent's mind at the time he did the act which it is claimed constituted the waiver, and the burden is on the party relying upon the waiver to prove this.   That such knowledge was in the agent's mind may be shown by circumstances as well as by direct evidence. *Morrison* v. *Bausemer,* 32 Gratt. 225; *Johnson, &c.,* v. *Natl. Ex. Bk.,* 33 Gratt. 473, 486-7; 2 Minors. Inst. (4th Ed.) 980; 1 Joyce on Ins., sec. 544; Mechem on Agency, sec. 721; *Martin* v. *South Salem L. Co.,* 94 Va. 28, 26 S. E. 591.

But even if the knowledge of Albert Morris & Co. was the knowledge of the insurance company, it did no act afterwards to the prejudice of the insured, or the beneficiary in the policy, or which can be held to have been a waiver of the forfeiture. If the insured, when called upon by Albert Morris & Co. to pay the amount of the premium two weeks after the house had been vacated, had paid that sum to them as premium on the policy, believing that they were collecting it as the agents of the in-

surance company, then he might have had the right to rely upon that as a waiver of the forfeiture; but he did not pay it, or pay any attention to their request. Neither did the insurance company, or its agents, Albert Morris & Co., do any act or make any declaration or pursue any course of conduct which gave the Building and Loan Association the right to believe that the forfeiture was or would be waived. The evidence clearly shows that when that association paid Albert Morris & Co. the amount of the premium, it paid it not as a premium due the insurance company, but as a debt due from it to Albert Morris & Co. as its own agents, for money advanced by them to pay the premium before the building had become vacant or the forfeiture had been incurred.

Mere knowledge by the insurance company of the existence of the breach of the contract does not of itself amount to a waiver or an estoppel. There must exist, in addition to a knowledge of the breach, some positive act of confirmation upon which in connection with the knowledge a waiver may be predicated, and by force of which the broken contract may be said to be revived. Richards on Ins., §§ 78, 79; 2 May on Ins., sec. 507; Vance on Ins., p. 374; *Gibson, &c., v. Liverpool, &c., Ins. Co.,* 159 N. Y., 418, 426-27, 54 N. E. 23.

Having reached the conclusion that the acts and conduct of the agents of the insurance company, conceding that they were binding upon it, were not sufficient to establish a waiver of the forfeiture, or to estop the insurance company from setting it up as a defense, it will be unnecessary to consider the effect of that provision in the policy which declares that no officer, agent, or representative of the company shall have the power or be deemed or held to have waived any condition of the policy unless such waiver shall be written upon or attached to it.

We are of opinion that there is no error in the judgment of the Court of Law and Chancery, and that it must be affirmed.

*Affirmed.*