## Richmond.

## Virginia Fire and Marine Insurance Company v. W. J. and M. A. Lennon.

December 18, 1924.

1. Fire Insurance—*Sole and Unconditional Ownership—Conditional Sale.*— It is a well established rule that one who buys personal property on condition that the title thereto shall remain in the seller until it is paid for is not the sole and unconditional owner of such property before full payment of the purchase price. The vendee under such conditional sales contract is not the sole and unconditional owner within the meaning of the condition of an insurance policy, that it shall be void if the ownership of the insured be other than unconditional and sole.

2. Fire Insurance—*Sole and Unconditional Ownership—Conditional Sale— Where Title Passes and a Lien is Retained.*—A distinction is to be observed, and very properly, between those cases where title is reserved in the vendor until the purchase price is paid in full, and cases where title passes and a lien is retained for the purchase price. If title has passed to the purchaser the fact that a lien has been retained for the purchase price does not make his interest other than sole and unconditional, but if title remains in seller until the entire purchase price has been paid, the purchaser is not the sole and unconditional owner while a portion remains unpaid, and a policy so describing him is avoided by such statement.

3. Fire Insurance—*Sole and Unconditional Ownership.*—The clause as to the sole and unconditional ownership contemplates a beneficial and practical ownership. Such ownership is in those on whom the loss would certainly fall, not as a matter of mere contract obligation, but as a result of real *bona fide* rights in the property. To be unconditional and sole, within the meaning of the phrase, the interest or ownership of the insured must be completely vested, not contingent or conditional, nor in common or jointly with others, but of such a nature that the insured would also sustain the entire loss if the property be destroyed whether his title be legal or equitable, that is to say, insured's ownership is "sole" when no one other than insured has any interest in the property as owner, and is "unconditional" when the quality of the estate is not limited or affected by any condition.

4. FIRE INSURANCE—*Sole and Unconditional Ownership—Part only of Property Owned by Insured*.—The title to all of the personal property insured must be unconditional, and insured, when his title to part thereof is conditional, cannot recover for the loss of such part as he owns unconditionally.

5. FIRE INSURANCE—*Sole and Unconditional Ownership—Chattel Mortgage.*— A chattel mortgage on personal property does not violate the unconditional and sole ownership clause in an insurance policy.

6. FIRE INSURANCE—*Sole and Unconditional Ownership—Distinction between Chattel Mortgage and Conditional Sale.*—While, as between vendor and vendee, a conditional sales contract may be but a short form of chattel mortgage, and as between the vendor and vendee a conditional sale contract, when the property is destroyed, will not relieve the vendee from the payment of the purchase money, yet as between the purchaser of property and an insurer who contracts with the purchaser upon the express stipulation that the interest of the purchaser shall be unconditional and sole ownership, the existence of a conditional sales contract, without the knowledge of the insurer, would render the policy void.

7. FIRE INSURANCE—*Sole and Unconditional Ownership.*—One whose ownership and interest in property are dependent upon his performance of an act which has not been performed cannot be said to be the unconditional owner.

8. FIRE INSURANCE—*Sole and Unconditional Ownership—Chattel Mortgage Clause—Inquiry by Company as to Title.*—In Virginia the unconditional and sole ownership clause and the chattel mortgage clause have been recognized and upheld, and an insurance company, by issuing its policy without making specific inquiry as to the title or ownership of the insured in the property, does not waive these conditions.

9. FIRE INSURANCE—*Sole and Unconditional Ownership—Chattel Mortgage Clause—Case at Bar.*—Even if it were true that, according to the Virginia authorities, a conditional sales contract is in legal effect nothing more than a short form of chattel mortgage between insurer and insured, it is immaterial so far as the ultimate outcome of the instant case is concerned as the policy in question contained a provision avoiding the policy if the personal property was mortgaged, as well as the conditional ownership clause.

10. FIRE INSURANCE—*Chattel Mortgage Clause—Breach of Condition.*—The breach of the stipulation against a chattel mortgage, upon compliance with which the validity of the policy by its terms is made to depend, will avoid the policy and defeat a claim upon it, unless knowledge of the chattel mortgage is brought home to the company, or it is otherwise estopped from relying upon it.

11. FIRE INSURANCE—*Breach of Conditions—Waiver.*—It is well settled that

any acts, declarations or course of dealing by an insurance company, with knowledge of facts constituting a breach of a condition in the policy, leading the party insured honestly to think that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the insurance company from insisting upon the forfeiture, though it might be claimed under the express letter of the policy.

12. FIRE INSURANCE—*Breach of Conditions—Waiver—Knowledge of Agent.*—Knowledge of an agent of a fire insurance company, acquired not in his capacity as agent for the company but in his capacity as a general real estate agent, that insured's interest in the property insured was not sole and unconditional to bind the company would have to be present in the agent's mind at the time he did the act which it is claimed constituted a waiver of the condition, and the burden is on the party relying upon the waiver to prove this.

13. FIRE INSURANCE—*Breach of Conditions—Waiver—Knowledge of Agent—Case at Bar.*—In the instant case the agent for the insurance company was also a general real estate agent and had rented the property to plaintiffs in which their personal property was when burned. Plaintiffs borrowed from or got the agent to endorse a note for $350.00 and claimed they told him the money was wanted "to pay on the furniture." About two months later plaintiffs insured the furniture through this agent.

    *Held:* That the evidence was not sufficient to show that agent had knowledge that plaintiffs furniture was held by them under an installment contract.

Error to a judgment of the Circuit Court of Elizabeth City county, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Meredith & Meredith* and *Leake & Buford,* for the plaintiff in error.

*John H. Bowen,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

The defendant is a Virginia corporation with its head office at Richmond, Va. M. H. Morgan is its agent at Hampton, Va. He is agent for a number of other insurance companies and is also a real estate agent, acting as such for persons desirous of renting out their real estate. The plaintiffs are husband and wife. About May 24, 1921, they rented, through M. H. Morgan as agent for a Mrs. Shelton, what is known as the Shelton farm in Elizabeth City county, their object being to conduct a boarding house. Plaintiffs took possession of the leased premises in the early part of June, 1921, and on July 12th of the same year made a verbal application for insurance upon their furniture in the leased premises. A policy of $4,000.00 was issued by Morgan upon the furniture in favor of the plaintiffs. The policy was in the usual standard New York form, and contained among others the following clauses: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; * * * or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage." Eight days after the policy issued, at about three o'clock A. M., a fire broke out on the premises occupied by the plaintiffs, but, through the efforts of several boarders, it was extinguished before any serious damage was done. We are not concerned with the details, disclosed by the evidence, as to the probable origin of the fire, further than to say in passing that the fire was undoubtedly of incendiary origin, and immediately after this fire all the boarders departed from the premises, leaving only the plaintiffs.

On the following Monday, July 25th, at about two o'clock A. M., another fire broke out, totally destroying

the dwelling house and the insured furniture. There were many peculiar circumstances connected with this second fire, and, while we are not concerned particularly with them here, they too, and not unjustly, directed the finger of suspicion toward the plaintiffs as the authors.

After the fire, when claim was made against the defendant insurance company, it was ascertained that plaintiffs purchased, on May 25, 1921, $1,946.60 worth of furniture from the Brittingham Furniture Company, of Hampton, Va., under conditional sales contracts, and that only one hundred and ten ($110.00) dollars had been paid on the purchase price thereof. This payment was made on May 25, 1921. An instalment due on June 25th of $106.50 had not been paid, and an instalment of $106.50 due on July 25, 1921, the day of the last fire, had not been paid.

The conditional sales contracts were identical in terms and conditions, and as far as it is necessary to copy them here were as follows:

"It is hereby expressly understood and agreed that the title and right of property in said articles is to remain and be vested in the said Brittingham Furniture Company, Inc., that no title to the same shall pass until the said articles shall have been paid for in the manner herein specified, and that the said Brittingham Furniture Company, Inc., or their agents or attorneys, may at any time enter upon the premises of the undersigned, without process of law, and take possession of and remove said articles upon default being made in any of the instalments, herein specified, for more than three days, and if said articles, when so taken possession of, or at any time should be worth less than the balance due on them, the undersigned agrees to pay the balance. Provided that if default is made upon the payment of any of the said instalments all the purchase

price unpaid shall become due and payable, and provided further, that the said Brittingham Furniture Company, Inc., shall have the right to forthwith repossess themselves of said goods should they be removed from said residence without the consent of the said Brittingham Furniture Company, Inc.

"This contract contains all the conditions upon which said goods are delivered, and no other condition, verbal or written, shall vary or alter the same."

It was claimed that the defendant's agent, Morgan, was aware of the conditional sales contracts, and that he became aware of them through conversation had with him when the plaintiffs were negotiating with him for the rental of the Shelton farm, over six weeks before the insurance policy was written, and for a loan to pay on furniture to start their business with. These negotiations did result in securing Morgan's indorsement of a note for $350.00. The details of these negotiations, however, will be set out in full when we come to discuss the information which came into Morgan's possession as to the character of the plaintiffs' title.

When demand was made upon the defendant for payment of the loss, it declined to settle and notice of motion for $4,000.00 was filed by the plaintiffs against the defendant as aforesaid. The insurance company defended, among others, upon the following grounds: That the conditional sales contracts violated the sole and unconditional ownership and the chattel mortgage clauses (*supra*) in the policy, and thereby avoided it.

The plaintiffs denied this but alleged that even if these conditions of the contract of insurance, or either of them, would ordinarily have been violated by the conditional sales contracts, the company's agent had knowledge of the contracts and his knowledge was im-

puted to the company and this constituted a waiver of the breach of these clauses.

Trial of the case was had on October 10 and 11, 1922, and resulted in a verdict of $3,000.00 and judgment in favor of the plaintiffs.

There are five assignments of error. They consist of alleged errors as to the admissibility of evidence; as to the giving of certain instructions asked for by the plaintiffs; refusing certain instructions asked for by the defendant; in modifying others offered by the defendant; and as to the action of the court in refusing to set the verdict aside. As we view it, however, the case can be disposed of by considering the questions of law raised by the action of the court in giving instructions Nos. 1 and 4 and in refusing to give instructions Nos. 1-A and 2-A offered by the defendant and the refusal of the court to set the verdict aside.

The instructions 1 and 4 were as follows:

"The court instructs the jury that if they believe from the evidence that at the time the insurance was applied for through M. H. Morgan, agent of the Virginia Fire and Marine Insurance Company, the said M. H. Morgan, agent, had been told by the plaintiffs that a portion of the furniture insured was bought on the instalment plan from the Brittingham Furniture Company, then the court instructs the jury that such notice to the agent was notice to the company and amounts to a waiver of the condition of the contract against encumbrances and liens and requiring the plaintiffs to be the sole and unconditional owners thereof; and the jury should find for the plaintiffs in a sum not exceeding three-fourths of the actual cash value of each item of the property destroyed immediately preceding the fire, but in no event to exceed $4,000.00. And the

burden of proving such value to a reasonable degree of certainty rests upon the plaintiffs.

"The court further instructs the jury that the conditional sales contract in question is a short form of chattel mortgage, the reservation of the title being merely security for the payment of the debt, and was not such an estate in or title to the property within the meaning of the provision in the policy sued on that if the interest of the assured be other than unconditional and sole ownership or be or become encumbered by chattel mortgage. The interest of the assured continues to be an unconditional and sole ownership notwithstanding such contract."

The instructions 1-A and 2-A offered by the defendant and refused by the court, were as follows:

"The jury are instructed that, under the terms of the policy of insurance sued on in this case, if any of the insured property was held under the Brittingham contracts introduced by the plaintiffs, then the policy was revoked or annulled, unless the jury believe and are satisfied from a preponderance of the evidence that the defendant had knowledge, at the time of issuing the policy, of the nature of the plaintiffs' interest in such property. If, therefore, you believe from the evidence that a portion of the property destroyed by the fire of July 25, 1921, was held by the plaintiffs under the Brittingham contracts, and if the jury further believe from the evidence that the defendant company did not, at the time of issuing said policy, know or have in mind, as hereinafter stated in these instructions, that the plaintiffs held a part of said property under the Brittingham contracts, you should find for the defendant.

"You are further instructed that if you believe from the evidence that Mr. Morgan, the local agent of the Virginia Fire and Marine Insurance Company, at the

time of issuing the policy of insurance, had knowledge, acquired in and about the prosecution of the business of that company, of the nature of the interest of the plaintiffs in the property bought from the Brittingham Furniture Company, or if you believe from the evidence that said Morgan had, prior to issuing said policy, acquired such knowledge not in and about the prosecution of that company's business, and further believe, from the evidence, that he had such knowledge in mind at the time of issuing such policy, then, but not otherwise, would such knowledge on the part of Mr. Morgan be imputed to the defendant, Virginia Fire and Marine Insurance Company."

The instructions 1 and 4 present the theory of the case as contended for by the plaintiffs and as accepted by the court. The defendant's theory as embodied in instructions 1-A and 2-A was rejected by the court. The question is, did the court proceed and try this case upon the proper theory.

It is apparent from the foregoing that the trial court proceeded upon the theory:

(1) That, in Virginia, at least, a conditional sales contract is a short form of chattel mortgage, even as between insured and insurer.

(2) That, this being true, where title to personal property was retained by a vendor by conditional sales contract, and vendee insured said personal property in his own name, there is no violation of the ordinary "unconditional and sole ownership" clause (such as the one above quoted) in the insurance policy.

(3) That neither did such a conditional sales contract, under such conditions, violate the chattel mortgage clause contained in the policy and heretofore quoted.

(4) That under the evidence in this case it was a question for the jury to determine whether Morgan,

agent for the defendant, had such knowledge of the title of the plaintiffs in the personal property insured as would be imputed to the defendant insurance company, and estop it from pleading violation of these clauses as matters of defense.

In our view of the case the determination of whether the trial court was right in the view it took of these several questions of law will dispose of this case without considering separately the assignments of error as they are presented in the petition.

The legal questions raised by (1) and (2) will be considered together as they involve one proposition, (2) being the logical conclusion if the correctness of (1) is conceded.

[1, 2] There is some conflict of authority among the courts as to whether a conditional sales contract constitutes a violation of the sole and unconditional ownership clause found in the standard form of policy and as it appears in the policy in this case.

The great weight of authority is to the effect that the vendee, under such conditional sales contracts, is not the sole and unconditional owner within the meaning of the condition of an insurance policy; that it shall be void if the ownership of the insured be other than unconditional and sole.

This exact question has never been adjudicated in Virginia, and we, therefore, feel free to follow the weight of authority, since the cases so holding also appear to have with them the weight of reason.

A distinction is to be observed, and very properly, between those cases when title is reserved in the vendor until the purchase price is paid in full, and cases where title passes and a lien is retained for the purchase price.

In 26 Corpus Juris, page 176, the result of an examination of the authorities is thus stated:

"If the title has actually passed to the purchaser, the fact that a lien has been retained for the purchase price does not make his interest other than sole and unconditional, and it has even been held that the purchaser is the sole and unconditional owner, notwithstanding the seller retains title to secure the unpaid purchase money, since such sale imposes upon him an unconditional obligation to pay for the property and subjects him to all the risks of loss incident to complete ownership. The general rule, however, is that if title is to remain in the seller until the entire purchase price is paid, the purchaser is not the sole and unconditional owner while a portion remains unpaid, and a policy so describing him is avoided by such statement."

In 14 R. C. L. pages 1059-60, in stating the rule with reference to personal property, the text declares:

"When the subject of insurance is personal property and the vendee is in possession under a conditional contract of sale, the title to remain in the vendor until the. conditions are performed, the vendee is not the sole and unconditional owner."

On page 1382 of volume 2 of Cooley's Briefs on Insurance, it is stated:

"It is a well established rule that one who buys personal property on condition that the title thereto shall remain in the seller until it is paid for is not the sole and unconditional owner of such property before full payment of the purchase price."

[3] On page 473 of volume 6 of Cooley's Briefs on Insurance, the author again refers to the same subject in the following language:

"The clause as to the sole and unconditional ownership contemplates a beneficial and practical ownership (*Bacot* v. *Phenix Ins. Co.*, 96 Miss. 223, 50 South. 729, 25 L. R. A. [N. S.] 1226, Ann. Cas. 1912-B, 262).

Such ownership is in those on whom the loss would certainly fall, not as a matter of mere contract obligation, but as a result of real *bona fide* rights in the property. To be unconditional and sole, within the meaning of the phrase, the interest or ownership of the insured must be completely vested, not contingent or conditional, nor in common or jointly with others, but of such a nature that the insured would also sustain the entire loss if the property be destroyed whether his title be legal or equitable (*Phenix Ins. Co.* v. *Hilliard*, 59 Fla. 590, 52 South. 799, 138 Am. St. Rep. 171). That is to say, insured's ownership is 'sole' when no one other than insured has any interest in the property as owner, and is 'unconditional' when the quality of the estate is not limited or affected by any condition."

These citations state the rule followed by the majority of courts of last resort correctly, clearly and briefly. The cases, from which the legal principles there enunciated are gathered, are too numerous to attempt citation to them all, and to quote at length from any of them would unnecessarily prolong this opinion.

In *Dumas* v. *Northwestern National Insurance Company*, decided by the Court of Appeals of the District of Columbia in 1898, 12 App. D. C. 245, 40 L. R. A., page 358, an action was instituted to recover upon a policy of fire insurance. Among other stipulations, the policy there involved contained the sole and unconditional ownership clause found in the policy issued to the plaintiffs in this case. It appeared in the *Dumas Case* that of the furniture insured for $3,000.00, about $600.00 in value had been purchased by plaintiff upon the instalment plan under a contract whereby the vendor delivered possession but retained ownership until full payment of the purchase price. The company defended the suit upon several grounds, one being that the policy

was avoided by reason of the fact that the plaintiff was not the sole and unconditional owner of the furniture held under the instalment contract of purchase:

"In the sense of absolute ownership, clear and unencumbered, as commonly understood, the plaintiff had title only to about one-half of the property which she sought to insure. With reference, however, to the portion of the property purchased from Craig and Harding, and which was covered by chattel mortgage, she may, in view of the authorities on the point, be also regarded as the sole and unconditional owner. * * But it is not apparent how, in any sense of the words, she can be regarded as the sole and unconditional owner of the residue of the property; and it would be difficult to conceive an ownership more distinctly of the character against which the defendant company sought to guard its liability. If, therefore, we are to give any force to the condition in the policy of insurance that the person insured must be the sole and unconditional owner, we cannot hold that the condition was observed in regard to a considerable part of the property sought to be protected by this instrument. It may well be that the plaintiff had an insurable interest in all of it, possibly even in the piano, which she had only rented, and that the defendant company might have insured that interest if only that had been presented to them for insurance. But certainly it was not the interest that was actually presented for insurance; it was not sole and unconditional ownership and it does not follow that, even if the defendant would have insured, it would have done so on the same terms and conditions. On the contrary, in such cases, the terms and conditions are usually different from the case of either absolute or unconditional ownership."

This case states with clearness the reasons which

have moved the courts to the majority rule. To the same effect are *MacWilliams* v. *Cascade Fire and Marine Insurance Co.*, 7 Wash. 48, 34 Pac. 140; *Phoenix. Ins. Co.* v. *Public Parks Amusement Co.*, 63 Ark. 187, 37 S. W. 959; *Brown* v. *Commercial Fire Ins. Co.*, 86 Ala. 189, 5 So. 500; *Lasher* v. *St. Jos. Fire and Marine Ins. Co.*, 86 N. Y. 423; *Barnard* v. *National Fire Ins. Co.*, 27 Mo. App. 26; *Farmville Ins. & Banking Co.* v. *Butler*, 55 Md. 233; *Geiss* v. *Franklin Ins. Co.*, 123 Ind. 172, 24 N. E. 99, 18 Am. St. Rep. 324; *Westchester Fire Ins. Co.* v. *Weaver*, 70 Md. 538, 17 A. 401, 18 A. 1034, 5 L. R. A. 478; *Garver* v. *Hawkeye Ins. Co.*, 69 Iowa, 202, 28 N. W. 555; *Havens* v. *Home Ins. Co.* 111 Ind. 90, 12 N. E. 137, 60 Am. Rep. 689; *Phenix Ins. Co.* v. *Pickel*, 119 Ind. 155, 21 N. E. 546, 12 Am. St. Rep. 393; *Pickel* v. *Phenix Ins. Co.*, 119 Ind. 291, 21 N. E. 898; *Dow* v. *National Assurance Company*, 26 R. I. 379, 58 A. 999, 67 L. R. A. 479, 106 Am. St. Rep. 728.

[4] In the last case the court said:

"The question raised in this case is the validity of the policy, which covered household furniture of every description in the house occupied by the plaintiff. The policy  *  *  *  contains a clause that the policy shall be void if the interest of the assured be other than unconditional and sole ownership, unless other ownership be assented to in writing. It is admitted that a considerable portion of the furniture was owned by others than the plaintiff holding it under what is called the instalment plan.

"The plaintiff claims the right to recover on what she owned herself, and had a verdict, under an instruction to that effect, to which the defendant takes exception.

"The condition of the policy is plain, and the breach of it is admitted. Ownership is an important element

in a contract of insurance. As said by Marshall, C. J., in *Columbian Ins. Co.* v. *Lawrence,* 2 Pet. 25: 'Underwriters do not rely so much on the principles as on the interest of the assured, and it would seem, therefore, to be always material that they should know how far this interest is engaged in guarding the property from loss.'

"Accordingly, when insurance is contracted upon property as a whole, it is no answer to say that the insured owned a part of it. A new element would be introduced into the contract. We cannot say that the contract would have been made as it was, or even at all, if the fact had been known that only a small part of the property belonged to the plaintiff. Such a fact is deemed to be so important that it is no longer merely a provision of contract, but of statute, for the statute prescribes the clause in question. The terms of it apply to the policy as a whole. The policy is made void; not void simply as to the part of the property in which there may not be absolute ownership and valid as to the rest. We see no room for such a construction of the terms of the policy."

An examination of the foregoing cases will establish the correctness of the conclusions of the text writers quoted, and they are also authority for the principle quoted in the last mentioned case (*Dow* v. *National Insurance Co.*), that title to *all* of the personal property insured must be unconditional, and that insured, when his title to part thereof is conditional, cannot recover for the loss of such part as he owns unconditionally.

But it is contended that in Virginia conditional sales contracts are not violative of the sole and unconditional ownership clause in an insurance policy, and in support of this contention are cited: *Exposition Arcade Corp.* v. *Lit Bros.,* 113 Va. 574, 75 S. E. 117, Ann. Cas. 1913-D,

335, in which Keith, P., speaking for the court, used this language: "The agreement that the title should remain in the payee until the notes were paid is a short form of chattel mortgage," and *Manhattan Fire Ins. Co.* v. *Weill & Ulman*, 28 Gratt. (69 Va.) 389, 26 Am. Rep. 364; *Morotock Insurance Co.* v. *Rodefer Bros.*, 92 Va. 747, 24 S. E. 393, 53 Am. St. Rep. 846; and *Union Assurance Society of London* v. *Nalls*, 101 Va. 613, 44 S. E. 896, 99 Am. St. Rep. 923, which held that the unconditional and sole ownership clause is not broken by the existence of a mortgage on the property at the date of the policy.

As above stated, it is the contention of counsel for plaintiffs that the result of these decisions is to remove any legal distinction between a conditional sales contract and a chattel mortgage in a case such as we have under review, and to hold that the existence of a conditional sales contract does not violate the unconditional and sole ownership clause in a policy of insurance.

[5] We cannot concur in this view. Of course it is universally held that a chattel mortgage on personal property does not violate the unconditional and sole ownership clause in an insurance policy, and in some jurisdictions, as stated, a conditional sales contract does not.

[6] We do not, however, construe *Arcade Corporation* v. *Lit Bros.*, *supra*, to abolish the distinction between conditional sales contracts and chattel mortgages in a contention between insurer and insured in a case such as we are now considering, and even if we did it would avail the plaintiffs nothing, because in that event the conditional sales contract being construed as a chattel mortgage, would violate the condition of the insurance policy against incumbering the insured personal property by chattel mortgage.

In the case just above referred to (*Arcade Corporation* v. *Lit Bros.*), the controversy was between buyer and seller for the unpaid purchase price of goods delivered to the buyer, which were subsequently destroyed by fire, and the court held they were held by the latter at his own risk, and that in *legal effect* the conditional sales contract was the same as if the buyer had obtained title from the seller and had given back a mortgage to secure the purchase price. This case follows *Chicago R. Equipment Co.* v. *Merchants' Bank*, 136 U. S. 268, 10 S. Ct. 999, 34 L. Ed. 349, in which the same expression is found. But this was also a controversy between seller and purchaser and involved a series of notes, which in addition to setting out that title was retained by the seller, also declared that they were secured on the freight cars sold to the railway company. Whether the interest or ownership of the vendee in the property was unconditional and sole ownership was not before the court in either case. In the *Chicago Equipment Co. Case*, Justice Harlan, at page 280 (10 S. Ct. 1002) of the opinion, says: "The fact that, by agreement, the title is to remain in the vendor of personal property until the notes for the purchase price are paid does not *necessarily* (italics ours) import that the transaction was a conditional sale." And again, at page 282 (10 S. Ct. 1002): "It is a mistake to suppose that there is any conflict between these views and those expressed in the subsequent case of *Harkness* v. *Russell*, 118 U. S. 663, 680, where the whole doctrine of conditional sales of personal property was carefully examined, and in which the particular instrument there in question was held to import not an absolute sale, but only an agreement to sell upon condition that the purchasers should pay their notes at maturity. With the principles laid down in the latter case we are entirely satisfied."

In *Harkness* v. *Russell* (118 U. S. 663, 7 S. Ct. 51, 30 L. Ed. 285), referred to by Justice Harlan, quoting from the syllabus, the court held:

"A, having agreed to sell certain personal property to B, on the performance of conditions on his part, delivered it to him, and took from him a promissory note stating the following as the condition of the sale: 'The express condition of this transaction is such that the title, ownership, or possession of said property does not pass from the said A until this note and interest shall have been paid in full, and the said A has full power to declare this note due and take possession of said engine and saw mill when he may deem himself insecure, even before the maturity of this note. In case said property shall be taken back, A may sell the same at public or private sale without notice, or he may without sale endorse the true value of the property on this note, and I agree to pay on the note any balance due thereon, after such endorsement, as damages and rental for said machinery.' B entered into possession, and, without performing the conditions of sale, sold the property to C, who knew that it had not been paid for, and that A claimed title to it. At the time of the sale to C, the value of the property was less than the amount due on the note. In an action against C to recover the value of the property. Held: That this transaction was not a mortgage, but was an executory conditional sale, and, being free from fraud, that it was valid."

It is obvious, from the foregoing, that the United States Supreme Court was particular to draw a distinction between cases which, at first blush, may seem to be in conflict, and not to become committed to the hard and fast rule that every case where a vendor undertakes to retain title to goods sold that his contract with the vendee amounts to nothing more than a chattel mort-

gage; and so in Virginia our court, in using similar language in construing a contract in a similar case, did not intend to lay down a hard and fast rule.

In Virginia, it should be noted that conditional sales contracts, and sales contracts retaining title to personal property in the vendor, have been specifically recognized by statute as distinguished from liens reserved thereon. Section 5189 of the Code, 1919, as amended by Acts 1923, chapter 159, and sections 5190 and 5191.

The sales contract in the instant case not only provides that title and right of property in the furniture in question shall remain in the vendor, but that in the event that the vendee fails to pay the purchase price or any instalment thereof as provided, the vendor shall have immediate right to take possession of same; and the vendor also retains the right to repossess if the furniture is removed from the residence then occupied by vendee. The possession of vendee is thus qualified and the ownership is conditioned upon full payment of the purchase price. There is only one characteristic of ownership here, viz.: The right to use the furniture, and that was restricted to the premises then occupied by vendee. This contract is to all intents and purposes identical with the contract referred to in *Harkness* v. *Russell, supra,* in which the United States Supreme Court held that the transaction was not a mortgage, but was an executory conditional sale. As above shown, this holding was specifically approved in *Chicago Ry. Co.* v. *Merchants Bank* (U. S.), *supra,* and this was the case Keith, P., followed in *Arcade Corp.* v. *Lit Bros., supra.* See also *Bailey* v. *Baker Ice Machine Co.,* 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275; and *Bryant, Trustee,* v. *Swofford Bros.,* 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997.

So, while it may very well be, as between the vendor

and vendee, a conditional sale contract, when the property is destroyed, will not relieve the vendee from the payment of the purchase money, yet as between the purchaser of property and an insurer who contracts with the purchaser upon the express stipulation that the interest of the purchaser shall be unconditional and sole ownership, the existence of a conditional sales contract, without the knowledge of the insurer, would render the policy void.

[7] To hold otherwise under the conditions of the contract above set out would be to totally disregard the plain meaning of ordinary English. One whose ownership and interest in property are dependent upon his performance of an act which has not been performed cannot be said to be unconditional ownership. If this is not conditional ownership then there is no such thing as conditional ownership. The unconditional and sole ownership clause in an insurance policy is aimed at just such ownership. It is all well enough to talk about such a clause referring to the interest of the insured and not to the legal title, but the interest of the insured is nothing, where he has paid little or nothing and is insolvent, as the plaintiffs are shown to be by the record in this case. As was said by Keith, P., in *Westchester Ins. Co.* v. *Ocean View Co.*, 106 Va. 633, 56 S. E. 584, quoting May on Ins. (4th ed.), section 288:

"Violation of a condition in the policy that if the building is on leased ground it must be so expressed will be fatal, although no question was asked in the application in respect to the matter. And land held under a lease to A and his heirs and assigns forever, reserving a perpetual rent to the grantor, is a leasehold," and Ostrander on Fire Ins. (2nd ed.), section 66, page 224: "When the true ownership is not required to be stated by the conditions of the policy, generally

it will be sufficient if the insured has an insurable interest; but when such requirement is the condition of the policy it becomes a material part of the contract, and all rights under it are forfeited by noncompliance. A failure in such case to disclose truly the interest in the property cannot be regarded an immaterial circumstance. By express stipulations the parties made it material, and the validity of the contract depended upon the compliance with the condition."

And then the learned judge continues at page 639 (56 S. E. 586):

"The condition of the policy was that it should be void if the interest of the insured was other than unconditional and sole ownership, or if the building insured should be upon ground not owned by the insured in fee simple. It appears that no inquiry was made by the insurer; that it had no knowledge of the true condition of the title, and the case depended upon a construction of the effect of the condition in the policy just recited. The court held that it was incumbent upon the applicant to disclose the nature of his title; that the insured, by accepting the policy in question, was charged with notice of its contents and bound by its conditions; that the company, by issuing the policy without inquiry, did not waive the conditions as to title and ownership."

[8] And Buchanan, J., in *Va. Fire & Marine Ins. Co. v. Case*, 107 Va. at page 590, 59 S. E. 369, 122 Am. St. Rep. 875, repeats the foregoing language with approval. Thus it will be seen that in Virginia the unconditional and sole ownership clause and the chattel mortgage clause have been recognized and upheld, and further, that an insurance company, by issuing its policy without making specific inquiry as to the title or ownership of the insured in the property, does not waive these

conditions. See also *Rochester Ins. Co.* v. *Monu. Savings Ass'n,* 107 Va. 701, 60 S. E. 93. We, therefore, hold that in the absence of knowledge on the part of the insurer a conditional sales contract, such as appears in the case under consideration here, affecting the personal property insured, would render the policy void when it contains the standard "unconditional and sole ownership" clause.

[9] But even if it were true that, according to the Virginia authorities, a conditional sales contract is in legal effect nothing more than a short form of chattel mortgage between insurer and insured, it is immaterial so far as the ultimate outcome of this case is concerned.

If the conditional sales contract did not violate the unconditional and sole ownership clause, then, being a chattel mortgage, it undoubtedly violates that clause providing that if the property is encumbered by chattel mortgage the policy shall be void unless the trial court was right in that part of the instruction which told the jury in effect that the conditional sales contract was a short form of chattel mortgage, and was not such an estate in, or title to, the property, within the meaning of the policy sued on, as to render it void if the property was or became incumbered by chattel mortgage.

This brings us to consideration of contention (3) by plaintiffs:

[10] Among others there are two distinct clauses in the policy sued on in the instant case, intended to cover conditions different in character—the sole and unconditional ownership clause, and the chattel mortgage clause.

Both clauses are in the contract between the parties; they are not identical in language and they were not intended to be identical in meaning or in scope. No decision of the appellate court of this State has ever

declared them identical and, so far as we are aware, no decision of any other appellate court has so declared them. It is true that the Supreme Court of Virginia has declared that a chattel mortgage does not violate the sole and unconditional ownership clause, but it is not true that it has declared that a chattel mortgage does not violate the chattel mortgage clause. On the contrary, it has held the reverse and avoided the policy, under that clause, because of a chattel mortgage. *Virginia Fire and Marine Ins. Co.* v. *Case*, 107 Va. 588, 59 S. E. 369, 122 Am. St. Rep. 875.

In a very comprehensive discussion appearing in volume 15, Virginia Law Register, page 842, Judge Crump reviews the Virginia cases in which chattel mortgage clauses, similar to the one under consideration in the instant case, were considered. The cases there discussed are the cases relied on by the plaintiffs to establish the contention upon which the instruction just referred to is based. He closes the discussion with this conclusion:

"Considering these three latest cases as bearing upon the question with which this article is headed, the conclusion is inevitable that the *Nalls Case* is to be regarded as overruled, and that the law in this State as to the effect of a chattel mortgage existing upon personal property when it is insured is to be regarded as settled in accordance with the decisions in the *Sulphur Mines Co. Case* in 94 Va., and in *Virginia F. & M. Ins. Co.* v. *Case* in 107 Va. We conclude, therefore, that the rule in Virginia is now to be regarded as fixed—that the breach of the stipulation against a chattel mortgage, upon compliance with which the validity of the policy by its terms is made to depend, will avoid the policy and defeat a claim upon it, unless knowledge of

the chattel mortgage is brought home to the company, or it is otherwise estopped from relying upon it.

"This principle is in accordance with the decisions of the Supreme Court of the United States upon this question, and also with the weight of authority. *Hunt* v. *Ins. Co.*, 196 U. S. 47; Vance, Ins., pages 447-8; Ostrander on Fire Ins., page 253; 2 Cooley Briefs on the Law of Ins., pages 1396-7-8; and 13 Virginia Law Register, 718."

In these conclusions we concur, so that the plaintiffs' case must fail in either view of the situation, unless they have shown a state of facts or submitted evidence which established knowledge on the part of the defendant company's agent, Morgan, of the condition of the plaintiffs' title, such as would be imputed to the company. This brings us to the (4th) proposition, and in considering this proposition it is necessary to inquire whether there is sufficient evidence in the record to submit the question to the jury under proper instruction, or whether, as a matter of law, the agent had no such knowledge.

We will examine first into the legal requirements, and then measure the evidence by these requirements.

The case of *Foreman* v. *German Insurance Ass'n*, 104 Va. page 694, 52 S. E. 337, 3. L. R. A. (N. S.) 444, 113 Am. St. Rep. 1071, is practically on all fours with the instant case so far as the question we are discussing is concerned. In that case Albert Morris & Company were agents for the insurance company as well as for the building and loan association, which held a mortgage upon the property of the insured. On the 5th of June, the premium on the policy not having been paid, Albert Morris & Company, as agents for the building and loan association, paid the premium. On July 5th the insured vacated the premises and gave

the key to Albert Morris & Company, as agents for the building and loan association. The buildings were destroyed by fire in November and the insurance company denied its liability on the ground that the vacancy clause in the policy had been violated. In disposing of the question of the knowledge of the agent as to the vacancy of the premises being imputed to the insurance company, the court said:

[11, 13] "It is well settled that any acts, declarations or course of dealing by an insurance company, with knowledge of facts constituting a breach of a condition in the policy, leading the party insured honestly to think that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the insurance company from insisting upon the forfeiture, though it might be claimed under the express letter of the policy. *Georgia Home Ins. Co.* v. *Goode*, 28 Gratt. (69 Va.) 88; *Morotock Ins. Co.* v. *Pankey*, 91 Va. 259-60, 21 S. E. 487; *Va. Fire & C. Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 433, 46 S. E. 463, 102 Am. St. Rep. 846, and cases there cited; *Ins. Co.* v. *Eggleston*, 96 U. S. 572, 24 L. Ed. 841.

"Applying that principle to the facts of this case, it is manifest, we think, that the plaintiff in error has failed to show that the insurance company has waived or estopped itself from relying upon the forfeiture set up as a defense. The premium was paid on June 5th, and the building did not become vacant until July 5th, and there is no evidence that the insurance company knew that it became vacant before the fire occurred.

"It is argued that its agents, Albert Morris & Company, knew that it was vacant, and that their knowledge was notice to the insurance company. It is true that Albert Morris & Company did know it, but that knowledge was acquired by them as agents of the

building and loan association, and not while attending to the affairs of the insurance company.   Knowledge acquired in that manner, in order to be binding upon the insurance company, would have to be present in the agent's mind at the time he did the act which it is claimed constituted the waiver, and the burden is on the party relying upon the waiver to prove this."

In the instant case Morgan was agent for the defendant insurance company and he was also a general real estate agent.   In the latter capacity he negotiated a loan of $350.00 to the plaintiffs, or he personally endorsed a note to enable plaintiffs to secure $350.00, but the loan was made in May and the insurance policy was issued on the 12th day of the following July.

Let us examine the evidence as to the information vouchsafed Morgan as to the conditional ownership of, or the mortgage upon, the property by the plaintiffs at the time the loan was made, and later when the policy was written, and see if there was anything said or done which could fairly be said to give him knowledge which would be imputed to the defendant and estop it from defending upon the ground that either or both of the clauses in the policy had been violated.

First we will take the bare circumstances that Morgan was agent for the insurance company and that he was also a general real estate agent.   But the making of the loan and issuing of the policy were so far apart that even independently of the principle enunciated in *Foreman* v. *German Ins. Co., supra,* he could not have been assumed to have carried the knowledge in his mind for that length of time.   But did he have any knowledge, even if he had kept everything that was said continuously in mind, that the $350.00 was to buy furniture under a conditional sales contract, or to make a cash payment and place a mortgage, or that there

was to be such a contract or a mortgage? Without considering Morgan's testimony, here is what the plaintiffs offer, Mrs. Lennon testifying:

"Q. Did you tell him on May 24th that you wanted to borrow some money to pay on the furniture?

"A. Yes, I told him we wanted $3,000.00, and he lent me $350."

W. J. Lennon testified:

"Q. What took place between you and the agent with reference to buying furniture on the instalment plan? In that connection I want you to confine yourself to the furniture.

"A. I and my wife went to Morgan, she wanted to get fire insurance down there. So he said: 'All right; how much have you got in there?' 'Oh, around $5,000 or $6,000.' He said: 'Well, I will insure it for $4,000.' So he insured the furniture. I and Mrs. Lennon went to Mr. Morgan before that and got a note for $350.00 off him for to pay on the furniture to stock the place up with.

"Q. Did he know what you got it for?

"A. Yes, sir.

"Q. How did he know it?

"A. Because we could not start without it.

"Note: Answer objected to.

"By Mr. Spratley:

"Q. How did he know that you wanted it to pay on the furniture?

"A. We told him that we could not start the place up without getting a loan.

"Q. How long before the policy was taken out did you tell him that?

"A. We told him that when we were starting up the place."

The conversation referred to as to the loan, took

place on May 24th and the policy was issued on July 12th.

Morgan's testimony was as follows:

"Q.  State the circumstances under which it (the fire insurance policy) was issued.

"A.  Mr. and Mrs. Lennon leased the place from me, and when she did she told me that when they moved out there I might write the insurance.  I told her all right.  She came in—I will refresh my memory from that paper (examining)—on July 12th and said that she wanted $4,000.00 insurance on the furniture out there.  I told her that in order to carry $4,000.00 of insurance she would have to have about $6,000.00 worth of furniture.  She said she had that or more. I asked some questions about the furniture and wrote the policy for her on the 12th for one year, premium $40.00, amount $4,000.00.

"Q.  Anything else?

"A.  She said she could not pay the premium all at that time, that she would pay part of it, and on July 22nd, I think it was, she came in and paid $10.00 on the premium."

Mrs. Lennon further testified:

"A.  I went into Mr. Morgan's place of business on King street and I told him: 'Mr. Morgan, I have got a lot of furniture there, part of it belongs to me, and part does not belong to me; I want to insure my furniture.' He said: 'How much have you?' I said: 'I have $5,000.00 or $6,000.00 worth, but I would like for you to come out and take an inventory to be sure; I will leave it entirely to you, the amount of insurance.'  He said: 'Very well; do you want to insure it?' I said: 'Yes, but I won't be able to pay the entire premium today; I will pay $10.00 on the premium today.'  He said: 'That will be all right; I will issue the policy, mail a copy of

this to Richmond to the company, and hold a copy myself, and they will return the copy to you or return the copy to me and I will deliver it to you'."

In view of the obvious absolute insufficiency of the foregoing evidence, conceding it all to be true, and after drawing every proper legal inference therefrom to impress the agent of the insurance company with knowledge of the condition of the plaintiffs' title to the insured property, when measured by the requirements as laid down in *Foreman* v. *Assurance Ass'n, supra,* we unhesitatingly reach the conclusion that there was nothing in the record which justified the court in submitting the question to the jury. It must be remembered that the only knowledge on the part of the agent of the insurance company which would effect an estoppel, so far as the company is concerned, to defend on the ground that the "unconditional and sole ownership" clause or the chattel mortgage clause had been violated, would be knowledge on his part that the title was conditional, that is bought on the instalment plan under conditional sales contract, or that a mortgage or other lien existed against it. The fact that he (the agent) loaned the Lennons $350.00, even if he knew they were using the funds to buy furniture, certainly did not even tend to give him any such knowledge, as neither he nor the company he represented took a mortgage or other lien upon the furniture, and the Lennons do not even claim that they told him they intended to buy furniture on instalment or to buy it and mortgage it. If what they say is taken as entirely true it amounts, at best, to only an inference that he knew. The most that Morgan could have known, so far as the evidence shows, is that the Lennons wanted some money to pay on furniture and he loaned them some, and that they "could not start the place up

without a loan." And this information he obtained in May as a real estate and loan agent. When the policy of insurance was issued, he was told: "I have got a lot of furniture there, part of it belongs to me, and part does not belong to me; I want you to insure *my* furniture."

The company issued the policy without inquiry as to the title, as it had a right to do, and it did not thereby waive the conditions thereof. *Weschester Ins. Co.* v. *Ocean View Co.*, 106 Va. 633, 56 S. E. 584, and *Virginia Fire and Marine Ins. Co.* v. *Case*, 107 Va. 588, 59 S. E. 369, 122 Am. St. Rep. 875.

For the foregoing reasons we are of opinion that the trial court erred in not setting aside the verdict of the jury and in not entering judgment in favor of the defendant, both of which this court will now do.

*Reversed.*