# Richmond

AMERICAN LIBERTY INSURANCE COMPANY, ETC., ET AL. v. LOUIS ALEXANDER BRESLERMAN.

April 25, 1960.

Record No. 5066.

Present, All the Justices.

The opinion states the case.

*Edward A. Marks, Jr.* (*Alexander H. Sands, Jr.; Sands, Marks & Sands,* on brief), for the appellants.

*A. Jeffery Bivins* (*Bivins, Jacobs & Bivins; Harvey L. Strelzin,* on brief), for the appellee.

I'ANSON, J., delivered the opinion of the court.

American Liberty Insurance Company and Commercial Union Fire Insurance Company, sometimes hereinafter referred to as the appellants, filed separate petitions, which were consolidated into one cause, for a declaratory judgment against Louis Alexander Breslerman, hereinafter referred to as the appellee, to procure an adjudication of the rights and obligations of the parties under four fire insurance policies insuring certain dwellings located in Princess Anne county, Virginia, which were owned by the appellee and damaged by fire on November 13, 1957, while vacant or unoccupied. The court below sustained a motion to strike the appellants' evidence, which was heard *ore tenus,* and by its decree held that the appellants had waived the provisions of the policies relating to vacancy of the property since they knew, through their agent, that the property was vacant when the policies were issued, and that the policies were valid obligations of the respective appellants and in full force and effect on the date of the fire. From this decree we granted an appeal and supersedeas.

The appellants contend in their assignments of error that the court erred: (1) In permitting the appellee to file his answers and amended answers on the day of the trial, since the time for filing responsive pleadings had expired; (2) In striking the appellants' evidence and holding as a matter of law that (a) their evidence established a waiver of the vacancy and unoccupancy conditions in the insurance policies, and (b) the policies were valid and in full force and effect on the date of the fire loss; and (3) In permitting the appellee to cross-examine appellants' witnesses relating to prior insurance contracts not involved in this suit.

■ Before stating the facts of the case we shall deal with the appellants' first assignment of error.

The record shows that an answer was filed in the American Liberty Insurance Company case within the time prescribed by the lower

court's order, to which there was no objection. It is true that the answer and the amended answer in the Commercial Union Fire Insurance Company case, and the amended answer in the American Liberty Insurance Company case were filed, by leave of court, on the day of the trial after the time fixed for filing pleadings had expired, but the chancellor allowed them to be filed because the appellee was a non-resident and both insurance companies had been enjoined by orders of the Supreme Court of the State of New York, county of Kings, from proceeding with their causes in the court below until one week before the day of the trial.

Rule 2:23 of the Rules of this Court gives the chancellor the right to extend, in his discretion, the time for filing pleadings. Rule 2:12 provides that "* * * Leave to amend shall be liberally granted in furtherance of the ends of justice." Under all the circumstances we hold that the chancellor did not abuse his discretion. Furthermore, the appellants waived their objection to the filing of the answer in the Commercial Union Fire Insurance Company case when it was agreed by all the parties that the two causes would be consolidated and the answer filed in the American Liberty Insurance case be treated as an answer in both cases.

The evidence consisted only of the testimony of George N. Badran, agent of the appellants, who operates George N. Badran & Company, a real estate and insurance business in the city of Norfolk; Frank M. Pollock, an independent fire adjuster; the appellee, who is an attorney at law in the State of New York, and exhibits filed with the testimony. There is no dispute with respect to the material facts.

In February, 1955, the appellee listed for sale with George N. Badran & Company, hereinafter referred to as the agency, six dwelling houses at Oceana, Princess Anne county, some of which were occupied by tenants and some were vacant. When it became apparent to the agency that it would be unable to sell any of the houses, it suggested to the appellee that the houses be rented. The appellee stated that he was not interested in renting the houses but wanted to sell them. After a lapse of six months the appellee revoked the agency's exclusive right to sell and listed the houses for sale with the Dave Miller Real Estate Company of Oceana, which company was also unsuccessful in its efforts to sell. In November, 1955, the appellee advised Badran that all of the houses were vacant and he again requested the agency to exercise its best efforts to sell them. The

agency resumed its efforts to sell, and being unsuccessful it returned the keys to the property to the appellee on May 28, 1956, and no representative of the agency visited the houses thereafter.

On August 19, 1955, while the agency was attempting to sell the property, it issued, as agent for the American Home Insurance Company of New York, a fire insurance policy covering all six of the houses for a period of one year, some of which were known by the agency to be vacant and some occupied.

Before the expiration of the American Home Insurance Company policy on August 19, 1956, the appellee notified the agency that the houses would be sold "shortly," and requested the agency to issue six separate fire insurance policies on the houses, each for a period of one year. Two of the policies were issued in the American Liberty Insurance Company, two in the Commercial Union Fire Insurance Company, and the remaining two were issued in another company not involved in this litigation. At the time the policies were issued they were held by the agency, awaiting notification from the appellee of the names of the purchasers, but they were later issued in the appellee's name at his direction.

On July 9, 1957, the agency wrote to the appellee reminding him that the policies issued in August, 1956, would expire on August 19, 1957, and requested instructions. Badran was advised by the appellee, in a telephone conversation, that W. R. Singleton, a real estate agent, had sold practically all of the houses under contracts, and to issue the policies for another year. After a telephone call from Singleton, who corroborated the appellee's statements, the agency issued renewal policies on four of the six houses in the appellant companies for one year beginning August 19, 1957, on which premiums were paid October 16, 1957.

The fire occurred on November 13, 1957. Badran learned of it from the account in the daily newspapers and turned the investigation over to Frank M. Pollock, who operates an independent adjusting agency. After a preliminary investigation, during which he ascertained that the property involved had been vacant, Pollock, on November 19, 1957, obtained from the appellee a non-waiver and reservation of rights agreement before proceeding further.

Badran testified that he did not know the houses were vacant when he issued the policies in August, 1956; that he did not know they were vacant when he issued the policies for a period of one year beginning August 19, 1957, or when he accepted payment of the

premiums on October 16, 1957, and that if he had known of the vacancies he would not have renewed the policies or accepted payment of the premiums.

The appellee was called as a witness by the appellants and testified only to the effect that the property had been vacant from December 1, 1955, until the day of the fire.

Each of the policies contained the standard provisions required by § 38.1-366, Code of 1950, 1953 Replacement Volume, which provides, in part, as follows:

*"Conditions suspending or restricting insurance.* Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

*     *     *     *     *     *     *

"(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or * * *."

The appellee does not contend that any writing was added to the policies providing for a waiver of the aforesaid vacancy provisions. He argues, however, in support of the chancellor's action, that the appellants' evidence shows the agency knew the houses were vacant when the policies, which are the subject of this litigation, were issued, and remained vacant for a period of more than sixty consecutive days, and that such knowledge of the agency, obtained while acting as a realtor, was imputed to the appellants and the vacancy conditions were waived.

The appellants contend in their second assignment of error that the evidence does not establish, as a matter of law, a waiver of the vacancy conditions of the policies, and the court erred in striking their evidence.

The principles of law applicable to the question presented are well settled in Virginia.

Knowledge of an insurance agent previously acquired, not in his capacity as an agent for an insurance company but while acting as a real estate broker, that the insured's property was vacant, may be imputed to and bind the company only if it is shown by the evidence that the agent had the information in mind at the time he issued the policy which it is claimed constituted a waiver of the condition, and the burden rests on the party relying on the waiver to prove this. *Virginia Fire and Marine Ins. Co.* v. *Lennon,* 140 Va. 766, 790, 791, 125 S. E. 801, 808; *Foreman* v. *German Insurance Ass'n,* 104 Va.

694, 698, 52 S. E. 337, 338; 10 Mich. Jur., Insurance, § 49, p. 350; 29A Am. Jur., Insurance, § 1022, p. 196; 2 Am. Jur., Agency, § 376, pp. 294, 295.

Applying the established principles to the facts in this case, we think it is manifest that the appellants' evidence did not establish a waiver of the vacancy conditions of the policies as a matter of law and that the trial court erred in striking their evidence. The agency's knowledge that the appellee's houses were vacant was acquired during the year 1955 and the spring of 1956, when it was acting as a real estate broker. It had no knowledge that the houses were vacant or unoccupied after its broker relationship with the appellee ceased in May, 1956. Badran's testimony shows that he did not know the houses were vacant when his agency issued the policies for the one-year term beginning on August 19, 1957, and that if he had known they were vacant or unoccupied his agency would not have issued the policies. When informed by the appellee that practically all the houses had been sold on contract, and after conferring with the appellee's agent, Singleton, it was not unreasonable for Badran to assume that the houses were occupied.

The burden of proof was on the appellee to show that Badran had in mind at the time of the issuance of the policies that the property was vacant. He has not met that burden. The only testimony of the appellee, when called as a witness for the appellants, was that the houses had been vacant since December, 1955. He did not say that Badran knew the houses were vacant at the time of the issuance of the policies on August 19, 1956, and August 19, 1957. Badran's testimony, that he did not know the houses were vacant after May, 1956, stands uncontradicted.

The appellants' evidence made out a *prima facie* case. The chancellor was not justified in concluding that the appellants' evidence established, as a matter of law, that the agent had in mind at the time of the issuance of the August, 1957, policies that the houses were vacant and the insurance companies waived the vacancy and unoccupancy conditions of the policies.

■ The appellants' contention that the court erred in permitting the appellee to cross-examine appellants' witnesses relating to prior insurance contracts not involved in this suit is without merit.

"Cross-examination may be employed to test a witness' credibility in such an infinite variety of ways that an attempt to list them would be futile. Thus a witness may be asked, on cross-examination, any

question touching his examination in chief, which tends to test his veracity or credibility. * * * To discredit the witness, if there be reason to doubt his truthfulness, is one of the legitimate and leading objects of cross-examination.

"Details of the matters testified to on direct examination may be elicited to test the consistency and plausibility of the witness' testimony. * * *." The Law of Evidence in Virginia and West Virginia, edited by Charles P. Nash and published by the Michie Company, 1954, § 37, p. 68, and cases there cited. See also 20 Mich. Jur., Witnesses, § 42, p. 486.

Since Badran testified that he would not have issued the policies in August, 1957, if he had known the premises were vacant, the appellee had the right, for the purpose of testing his credibility, to cross-examine him on the question of whether he knew some of the houses were vacant when his agency issued the fire insurance policy in August, 1955, and if he knew the property was vacant when the policies were issued in 1956.

For the error committed in striking the appellants' evidence, the decree of the chancellor is reversed and the cause remanded for a new trial.

*Reversed and remanded.*